MARY F. WHEADON v. WARREN H. MEAD.

May 25, 1898.

Nos. 11,027—(102).

**Principal and Agent—Loan of Principal's Money upon Mortgage—Fraud—Negligence—Findings of Court.**

*Held*, that the findings of the trial court of certain evidentiary facts did not amount to a finding that the defendant was guilty of either fraud or negligence in the performance of his duties as plaintiff's agent in lending her money on real-estate security.

**Same—Evidence.**

Also, that the evidence was not such as to require such a finding.

**Mortgage by Vendee to Third Person a Purchase-Money Mortgage.**

Also, that, upon the facts, a mortgage executed by a vendee to a third person must be deemed as given to secure the purchase money.

Appeal by plaintiff from an order of the district court for Ramsey county, Kelly, J., denying a motion for judgment in her favor on the findings and that the court determine the damages to which she was entitled, and denying a motion for a new trial. Affirmed.

*William G. White,* for appellant.

Defendant had such a personal interest in the loan as disqualified him from making it as her agent, and gave her the right to repudiate the transaction and to recover the money. Mechem, Ag. §§ 454, 455, 457, 461, 462; Marsh v. Whitmore, 21 Wall. 178; Donnelly v. Cunningham, 58 Minn. 376; Friesenhahn v. Bushnell, 47 Minn. 443; Rich v. Black, 173 Pa. St. 92; McKinley v. Williams, 74 Fed. 94; Williams v. McKinley, 65 Fed. 4. The mortgage executed by Mrs. Lewis was not a purchase-money mortgage. It is essential to a purchase-money mortgage that it be given to secure a portion of the purchase price which the grantee has agreed to pay. Such a mortgage may, indeed, run to a third person, but he must purchase the money as part of the same transaction whereby the land is sold and with the understanding that the mortgage is to protect him to the same extent as if given to the grantor. Jacoby v. Crowe, 36 Minn. 93; Heuisler v. Nickum, 38 Md. 270; 1 Jones, Mort. § 469; Stansell v. Roberts, 13 Ohio, 149; Clark v. Munroe, 14 Mass. 351; Jones v. Parker, 51 Wis. 218; Kaiser v. Lembeck, 55 Iowa, 244. Defendant failed to exercise reasonable care to obtain adequate security. Lowenburg v. Wolley, 25 Canada Sup. 51; McFarland v. McClees (Pa. St.) 5 Atl. 50; Bank v. Western Bank, 13 Bush, 526.

*Warren H. Mead,* for respondent.

A substituted mortgage to a third person is a purchase-money mortgage. Jones v. Parker, 51 Wis. 218; Clark v. Munroe, 14 Mass. 351; McGowan v. Smith, 44 Barb. 232; Carr v. Caldwell, 10 Cal. 380; Nichols v. Overacker, 16 Kan. 54; Jackson v. Austin, 15 Johns. 477; Kittle v. Van Dyck, 1 Sandf. Ch. 76; Kaiser v. Lembeck, 55 Iowa, 244; Jones v. Tainter, 15 Minn. 423 (512); Jacoby v. Crowe, 36 Minn. 93; Hurlbert v. Weaver, 24 Minn. 30. Purchase money has been defined to be "Money paid for the land or the debt created by the purchase." Austin v. Underwood, 37 Ill. 438.

MITCHELL, J.

In the spring of 1889, the plaintiff, who resided in the state of New York, intrusted to defendant, who resided in St. Paul, $1,200, to be by him, as her agent, loaned on real estate mortgage security.

The defendant loaned the money to one Olmsted, who, as security for its payment, executed to plaintiff a mortgage on a lot in St. Paul. This lot had been conveyed to Olmsted by the defendant and one Reilly, almost contemporaneously with the execution of the mortgage by Olmsted to plaintiff. Three or four years subsequently, Olmsted, who had been reputed a man of considerable means at the time he executed the mortgage, became insolvent, and defaulted in the payment of interest. Thereupon defendant brought about an arrangement by which a Mrs. Lewis bought the mortgaged premises from Olmsted for the amount of the mortgage, but, instead of paying the mortgage in cash, she executed to plaintiff a note for $1,200, secured by mortgage on the lot. This note and mortgage were security for the same money represented by the Olmsted note and mortgage, but defendant neither released nor surrendered the latter. Mrs. Lewis' husband, then reputed to be a man of some means, joined with his wife in the execution of the note, but not in the execution of the mortgage. Lewis has since become insolvent, and his wife has not, and never had, any property except the mortgaged premises. The lot has proved to be utterly inadequate security for the money loaned on it. The plaintiff now tenders the defendant the note and mortgage, and brings this action to recover back her money and interest.

The ground on which she bases her right to recover is the alleged fraud, as well as negligence, of the defendant. The fraud charged is that the loan to Olmsted was merely colorable; that the lot was conveyed to him by defendant and Reilly to enable him to make the mortgage to plaintiff; but that the transaction was a scheme for their own benefit; and that defendant and Reilly retained plaintiff's money, and appropriated it to their own use. The negligence charged is lending the money to an irresponsible party on grossly inadequate security. The plaintiff also contends that the defendant had such a present interest in the transaction as to disqualify him from making the loan to Olmsted, and to give her the right upon discovery of the fact to repudiate the loan, and recover her money. The only finding of the court in that regard is that defendant and Reilly

"Had been in treaty with the said Olmsted prior to April, 1889, to sell and convey to said Olmsted said lot, in consideration of the transfer and delivery to them by said Olmsted of certain shares of stock of a corporation known as the North Shore Mining Company, and which then and there was the owner of about 575 acres of land situate near Port Arthur, * * * and which said stock said Mead and Reilly had agreed to receive, and did receive, in consideration of the transfer of said lot to said Olmsted, as and for the value of $2,000."

This is merely the finding of an evidentiary fact, which does not amount to a finding that the defendant was guilty of fraud, or that he was personally interested in the loan, or was acting for himself in making it. There is no finding that the loan was a condition of, or an inducement to, the trade between Olmsted and defendant and Reilly, or that there was any connection between them except a mere coincidence in time.

The court further found

"That, at the time of said conveyance of said lot by Mead and Reilly to said Olmsted, it was worth not to exceed the sum of $1,200."

This also is nothing more than an evidentiary fact, of much weight, doubtless, but not amounting to, or the equivalent of, a finding that the defendant was guilty of either fraud or negligence in making the loan. The defendant was bound merely to exercise reasonable skill and ordinary diligence; that is, the degree of skill and diligence usually possessed and exercised by men of ordinary capacity and care engaged in the same business. It by no means necessarily follows that defendant did not exercise this degree of skill and care in making the loan, because in the light of subsequent experience it may now be concluded that the lot was not at the time of the loan worth more than $1,200. Therefore, the findings as made did not entitle the plaintiff to judgment. The court found that the other allegations of the complaint were not true. Among these allegations was the following:

"That the defendant did not use good faith towards this plaintiff in investing and in loaning said sum of money, and did not use reasonable skill and diligence in loaning and investing the same, and in procuring proper and sufficient security for the repayment thereof."

The finding of the court that this was not proven is assigned as error. This presents the question whether the evidence conclusively proved that the defendant was guilty of either fraud or a lack of reasonable skill and diligence in loaning plaintiff's money.

We think that there was an entire absence of evidence of fraud either in fact or in law. The undisputed evidence is that the sale of the lot to Olmsted by defendant and Reilly for the mining stock had been verbally agreed on long before defendant received plaintiff's money, and that the deal was only conditioned upon the sufficiency of the title to the land which the stock represented, and that the execution of the deed was delayed pending the examination of the title; that, as already stated, there was no connection, save coincidence in point of time, between the conveyance of the lot to Olmsted and the loan of plaintiff's money; that the money was actually paid to Olmsted; and that defendant was in no way interested in or received any benefit from it.

Viewing the transaction retrospectively, in the light of subsequent experience and under changed conditions, men would be very liable to conclude that there was a lack of sound judgment and reasonable care in loaning $1,200 on this property. But nothing would be more unjust than to test a man's acts in 1889, while the real-estate boom still continued, by the conditions existing in 1897. No one who has not passed through one of these booms can realize how extravagant men become in their opinions as to the values of property, and how largely the judgment of even ordinarily prudent and conservative business men is influenced by the atmosphere surrounding them. After the boom has subsided, men can hardly believe that persons of ordinary business capacity and intelligence could ever have entertained such extravagant ideas of values; and hence, even when we honestly attempt to judge of their actions in the light of the conditions then existing, our judgment is liable to be unconsciously influenced by the changed conditions now existing. A number of witnesses presumably of ordinary intelligence, who were acquainted with values in 1889, testified that this lot was considered reasonably worth $2,000 at that time. The evidence also reasonably tended to prove that it was customary and considered safe at that time to lend money on real estate to the extent

of from one-half to three-fourths of its value, and that such mortgages readily sold at par. In view of this, we cannot say that the evidence was such as to require a finding that the defendant failed to exercise ordinary skill and care in making this loan.

There is no claim, and can be none, that defendant was guilty of any fraud in the subsequent transaction in which the Lewis mortgage was taken; nor was there any evidence of a lack of ordinary skill and care (unless in one particular, hereafter referred to) in taking the mortgage. Plaintiff's contention is that this was a new loan, and that the lot was then, according to defendant's own admissions, entirely inadequate security. But this was in no proper sense a new and original loan, and the fact that defendant called it that in his letters to plaintiff does not make it so. The plaintiff had the same and all of the security which she had before, and what at the time was considered additional security, viz. the personal obligation of Mrs. Lewis' husband. Moreover, defendant had informed plaintiff that the property had depreciated from one-third to one-half since the loan was made to Olmsted. He also advised her what he had done, and why he did it, to which she made no objection.

It is urged, however, that the Lewis mortgage is void, because Mrs. Lewis' husband did not join in the execution of it, and that defendant was negligent in taking the mortgage without the husband joining in its execution. The trial court held that this was, in contemplation of law, a "purchase-money" mortgage; and in this, we think, the court was right. While the deed from Olmsted to Mrs. Lewis was merely "subject" to the mortgage, and did not contain any "assumption clause," yet the evidence is to the effect that she bought it for the amount of the mortgage, $1,200, which was the only consideration for the conveyance, and as a part of the same transaction executed a mortgage for that amount to plaintiff. Had she executed a mortgage to Olmsted, it certainly would have been a purchase-money mortgage. Instead of that, she executed her mortgage for the amount on the property purchased to Olmsted's creditor and mortgagee. On these facts, it is a substituted mortgage to a third party for the purchase money. Jones v. Tain-

ter, 15 Minn. 423 (512); Jacoby v. Crowe, 36 Minn. 93, 30 N. W. 441.
Order affirmed.