ISRAEL G. LASH

*vs.*

GEORGE McD. LAMBERT et al.

Bond and mortgage given to secure $17,000, money lent, dated August 1, 1860, conditioned to be void, on the payment of said $17,000, in five years from that date, with interest at the rate of twelve per cent. per annum, payable semi-annually. On said day the obligee was, and ever since has been, a citizen resident and inhabitant of the state of North Carolina, and not there or elsewhere engaged in the military service of the United States, and owned property in the state of Minnesota, and did so far aid and abet the late rebellion against the government of the United States. During all said time the obligors, and the defendants who claim under them, were citizens, residents in, and inhabitants of, the state of Minnesota. *Held*, that the said semi-annual interest, at 12 per cent. per annum, accruing on said bond during the rebellion, before its maturity, by virtue of said special contract therefor, was recoverable after the termination of the rebellion. That said debt would not draw interest after maturity at 12 per cent. per annum under *Stat.* 1860, *Ch.* 56, *Sec.* 1.

This was an action commenced in the district court for Ramsey county, to foreclose a mortgage executed by Mary S. Lambert and Henry A. Lambert, her husband, to the plaintiff. Since the execution of the mortgage, both of the mortgagors have deceased, and the suit was brought against their heirs, and other parties claiming an interest in the mortgaged premises. The cause was tried before the court, without a jury, who found for the plaintiff, and judgment of foreclosure and sale was entered. The defendants appeal to this court. All of the material facts as found by the court below, appear in the opinion of the court.

Lash v. Lambert et al.

Smith & Gilman for Appellants.

The court erred in allowing any interest on the Lash claim, during the continuance of the war between the United States and the so-called Confederate States, to wit: between April 15th, 1861, and the President's proclamation of May 29th, 1865, for the reason that Lash was a citizen and resident of the state of North Carolina during the war.

It is well settled that a state of war suspends all contracts in existence between the citizens of the respective belligerents, during the continuance of the war. *Griswold vs. Waddington,* 16 *John.* 438, and cases there referred to.

That principle operated in its full force upon citizens in the United and Confederate States during the late war, not only upon general principles of law, but also by act of Congress of July 13th, 1861, and the proclamation of the President, issued in pursuance thereof August 16th, 1861. *The Prize cases,* 2 *Black,* 635.; *Mrs. Alexander's Cotton,* 2 *Wallace,* 404; *The Venice,* 2 *Wallace,* 258; *The Hampton,* 5 *Wallace,* 372; *The William Bagaly,* 5 *Wallace,* 377; *Hanger vs. Abbott,* 6 *Wallace,* 532.

*Billgery vs. Branch,* reported in June No. of American Law Register, 1869, by Supreme Court of Appeals of Virginia.

*Semmes vs. City F. Ins. Co.* U. S. Circuit Court for Connecticut. American Law Register, November, 1869, page 673.

*Tucker vs. Watson.* By Judge Jaynes, of District Court of Appeals of Virginia. American Law Register, February No., 1867, page 220.

*Conn. M. Life Ins. Co. vs. Hall, et al.* By Jameson, Superior Court, of Chicago. American Law Register, August No., 1868, page 606.

*Moore & Bros. vs. Foster & Moore.* By Chief Justice Chase. American Law Register.

In the case of the *Conn. M. L. Ins. Co. vs. Hall*, above referred to, it was decided that during the war, contracts between citizens of the opposing belligerents could not be enforced, even by a proceeding *in rem.* The attention of the court is particularly asked to the opinion of Judge Jameson in that case.

While the remedy to enforce a claim is thus suspended by a state of war, interest upon the claim is also suspended. *McCall vs. Turner*, 1 *Call* (*Va.*) 133; *Brewer vs. Hastie*, 3 *Call* (*Va.*) 22; *Hoare vs. Allen*, 2 *Dallas* (*Pa.*) 102; *Fox-craft vs. Nagle*, 2 *Dallas* (*Pa.*) 132; *Conn. vs. Penn.*, 1 *Peters, C. C. R.*, 496; *Tucker vs. Watson, Law Register, Feb. No.*, 1867, *and cases cited therein.*

The exception that the rule does not apply where the creditor, though a subject of the enemy, has a known agent here, authorized to receive payment, does not embrace this case; for it does not appear that Caldwell or Allis were known agents, authorized to receive payment, nor as to what was the character or extent of their agency. The obligors had the right to satisfy the conditions of the bond at any time, if there had been any one authorized to receive payment.

II.—If interest is allowable on the bond, the court erred in allowing interest at the rate of twelve per cent. per annum after maturity. It is not stipulated in the condition of the bond to pay interest after maturity, and the obligee would therefore only be liable at the rate of seven per cent., as damages.

And besides, if it was stipulated for twelve per cent. after maturity, it would not be legal, as it would be making the condition of a penal bond, itself a penalty. A stipulation

Lash v. Lambert et al.

for an interest penalty is of no more binding force than a penalty in any other form.

III.—The court erred in computing the amount due upon the mortgage, and in allowing for repairs, insurance, and other charges, to be deducted from the $11,763.87 paid in upon said indebtedness.

IV.—That the rents collected which came to the hands of said Lash, could only be applied in discharge of legal interest and principal, and it was erroneous to allow for repairs, except only such as were necessary to prevent waste. There is no pretence that the expenditures claimed were necessary.

ALLIS, GILFILLAN & WILLIAMS for Respondent.

I.—Admitting that the authorities cited by the appellants' counsel go to the extent claimed, they establish no principle that defeats the respondent's claim for interest in the case at bar.

This is the utmost that can be claimed for these authorities, to wit: A state of war suspends the performance of contracts between the citizens of the belligerent powers.

The courts will not enforce such contracts on behalf of the *obligees* and refuse to hold the *obligors* to be *in default* for not performing such contracts.

As a corollary it follows: That inasmuch as, during this period of suspense, the obligors to contracts are not *in default* for their non-performance, they cannot be compelled to pay interest during this period, interest being the *damages* which the law awards against an unpaying debtor for his *default*.

Now, it will be found that in all the cases where it has been held that *interest* cannot be collected during the period

of the forced suspension of commercial intercourse, caused by war, the interest referred to, is interest by way of *damages* for the non-payment, or non-performance of a contract —that is to say, of a contract, the payment or performance of which could have been enforced except for the state of war; in other words, a contract which had *matured*, and become, therefore, payable prior to, or during the state of war.

Now, this is *not* the case at bar.

The contract which the respondent is seeking to enforce in this action was entered into *before* the war commenced, and matured *after* it had closed;—that is, it was entered into on the 1st day of August, 1860, and it became due and payable on the 1st day of August, A. D. 1865.

There was then no *default* on the part of the debtor during the state of war, in the payment of the principal.

The contract, however, provided for the payment of interest, semi-annually, on the principal, during the term of the contract.

This *interest* was of course a part of the debt—due and payable under and by virtue of the contract itself; and not something that the law awarded by way of *damages* for *default* in performing the contract.

This interest was as much a part of the debt, under the contract, as the principal itself. It was the sum which the debtor, by his contract, had undertaken to pay for the *use* of the principal sum, during the term of the contract.

It is true that default was made in paying these interest installments during the state of war, but the respondent claims no interest on these installments, or damages, on account of these defaults.

Hence the authorities cited by appellants have no application to the case at bar.

The case at bar is simply, where the creditor is seeking, after the state of war has ceased, to collect his *debt*, consisting of the principal sum, and the interest agreed to be paid for the use of the same, and also certain interest for default in the payment of such debt, *since* the state of war has ceased, but no interest, whatever, for default *during* the state of war.

We think that his right to this recovery cannot be questioned, either on principle or authority.

II.—But it appears in this case that the respondent, though a citizen of North Carolina, during the period of war, had, during the same period, an agent, residing in the city of St. Paul, to whom the interest accruing on the principal of this debt could have been paid.

Hence the debtor was not excused for not paying his interest, and was in default for such non-payment from time to time, as the installments thereof became due, during the war.    1 *Am. Lead. Cases*, 527–8 ; *Conn. et al. vs. Penn.*, 4 *Wash. C. C.*, 441 ; *Conn. et al. vs. Penn.*, 1 *Peters C. C.*

III.—But the *status* presented by the rebellion, which lately occurred in certain states of the United States, did not relieve the debtors residing in the territories of one of the belligerents, from the duty of paying interest, during the state of war on the debts, due to persons residing in the territories of the other belligerent.    *Shortridge vs. Mason, decided by Chief Justice Chase, in the U. S. Circuit Court for North Carolina, Am. Law Rev.*, Oct. 1867, *p.* 95.

*By the Court.*—Ripley, Ch. J.—The judge who tried this case, without a jury, finds that on the first day of August, 1860, the plaintiff lent one Mary S. Lambert, the sum of $17.000, upon a bond executed by herself and Henry A. Lambert, her husband, in the penal sum of $34.000, con-

ditioned for the payment of said $17,000 in five years from that date, with interest at the rate of 12 per cent. per annum, payable semi-annually, and secured by mortgage upon real estate in the city of St. Paul, and an assignment of all leases then made, or which should thereafter be made, of the three westerly buildings on said mortgaged premises, and all the rents, issues and profits thereof, to be applied by plaintiff to the payment of said interest, as it accrued and became due and payable, and all expenses incurred by plaintiff upon the buildings, situate upon said premises, said assignors agreeing that plaintiff should cause the said buildings to be insured to the amount of $12.000, and pay the expenses thereof out of said rents; that plaintiff by his agent, one Caldwell, went into possession of said premises under said assignment, and collected the rents of said premises up to July, 1864, to the amount of $6231.37 and expended thereof for repairs and insurance upon said mortgaged property, the sum of $830.70; that thereafter, till the 31st of December, 1866, plaintiff, by his agent Lorenzo Allis, continued to collect the rents under said agreement, and received therefor $5333.50, and expended for taxes, insurance and repairs upon said premises, the further sum of $3166.61; that on said first day of August, 1860, plaintiff was and ever since has been a citizen, resident and inhabitant of the state of North Carolina, and not there or elsewhere engaged in the military service of the United States, and owned property in the state of Minnesota, to the amount of $20.000, and did so far aid and abet the late rebellion against the government of the United States; that no other proof was given as to whether or not the plaintiff did aid and abet the said rebellion; that from said day to July 18, 1864, the plaintiff had an agent residing in St. Paul, viz: said Caldwell; and that from that time until the 31st of

December, 1866, said Allis, who, during all that time was a resident of St. Paul, acted as plaintiff's agent.

The said judge also found that the amount of principal and interest due and unpaid upon said bond and mortgage is the sum of $27.422.44, for which judgment of foreclosure and sale was entered, from which defendants appeal.

In calculating the amount due, the district judge has allowed interest at the rate of twelve per cent. per annum after maturity, as well as before, and has deducted from the rents collected, the amounts above specified as paid by plaintiff's agents for taxes, repairs and insurance.

The appellants contend, that the court erred: 1st. In allowing any interest during the rebellion, *i. e.* from April 15, 1861, to the President's proclamation of May 29, 1865.

2d.   In allowing interest at twelve per cent. per annum after maturity.

3d.   In allowing for repairs.

The 2d and 3d objections are well founded.   The statute in force at the date of the bond reads as follows: "Interest for any legal indebtedness, shall be at the rate of seven dollars for one hundred dollars for a year, unless a different rate be contracted for in writing, but no agreement or contract for a greater rate of interest than twelve dollars for every one hundred dollars for a year, shall be valid for the excess of interest, over twelve per cent., and all agreements and contracts shall bear the same rate of interest after they become due, as before, if the same shall be clearly expressed therein : *Provided*, the same shall not exceed twelve per cent. per annum."   *Statutes* 1860, *ch.* 56, *Sec.* 1.

This bond is conditioned to be void on payment of $17.000, in five years, with twelve per cent. interest per annum, payable semi-annually.

There is here no stipulation, that· if the bond should become forfeited by failure to perform such condition, interest should run thereafter at twelve per cent. per annum, or any other rate.

There is nothing to take it out of the settled rule in this state, that the contract for interest ceases at maturity, and that thereafter, interest is allowed as damages.

As to repairs, the general rule is, that a mortgagee will be allowed for all necessary repairs on the tenement of which he is in possession. The court below does not find, that the repairs allowed for, were repairs necessarily made on the three westerly buildings, of which plaintiff was in possession. This is the fact which warrants their allowance, and it should appear affirmatively in the.finding, and especially, because whether they are necessary depends in each case on the particular circumstances thereof. *Dexter vs. Arnold*, 2 *Sumner*, 125, 126. *Green vs. Lewis*, 2 *Sumner*, 643.

As to interest accruing, on the special contract therefor, during the rebellion, before maturity, we think it was properly allowed. "A class of cases occurred after the revolutionary war, in which it was held, that interest was not demandable for the period during the war, where the citizen was in the enemy's country, or with the enemy, and had no known agent in the country, competent to receive payment, and give a valid discharge, because, as all intercourse was prohibited by the existence of the war, the payment of the principal was prevented by law." 1 *Am. Lea. Cases, p.* 528, and cases cited. As far as we can ascertain, these cases all differ from the one at bar, in that the debts were due before the war. . Neither, it may also be noted, was there any express contract for interest after maturity. But in the case of *Shortridge vs. Mason*, in the U. S. circuit court for North

Lash v. Lambert et al.

Carolina, 2 *Am. Law Rev.*, *p.* 95, Chase C. J., held, that these cases were inapplicable to the case of a debt due from a citizen of North Carolina to a citizen of Pennsylvania, and that interest thereon was not suspended during the rebellion. This was obviously correct, for it was the treason of the rebel, that brought about the prohibition of intercourse that followed upon the outbreak of the rebellion.

To claim exemption from the payment of interest on the ground, that he was not in default in not paying, because the law had prevented him from so doing, would be, to take advantage of his own wrong. *Harper et al vs. Ely, Cook Co., Ill. Circuit Court, July* 26, 1870. *Reported Chicago Legal News of July* 30, 1870. Nevertheless, we think the principle on which the cases first referred to, are based, would be applicable to the case of debts due from citizens of the United States, to citizens of the rebel states.

It was no fault of loyal citizens, that all intercourse became unlawful between themselves and the rebels; that all such was prohibited by positive law. [See *Act of Congress, July* 13, 1861.] In the words of the case last cited, "numberless cases can be found which assert that laches during war will not be imputed by any state to its own loyal citizens."

If, therefore, plaintiff's debt had been due at the outbreak of the rebellion, and he had no known agent, residing in Minnesota, authorized to receive payment, we think he should not have been allowed now to recover interest thereon for the time of the war; but that the defendants might well have pleaded, that they had been prevented by law from paying, and, therefore, in no default for not paying. Where this is the case, interest is not due; interest after a debt is due being given by law, as damages for default in not paying. 1 *Am. Lead. Cases, pp.* 526, 803; *Prescott vs. Parker*, 4 *Mass.*, 170.

But in the case at bar, not only did the principal debt not fall due till after the rebellion had been put down, but there was an express agreement to pay interest at twelve per cent. per annum till the principal became due. It is not therefore within the reason of the rule.

The payment of the principal debt has not been prevented by law; the payment of the semi-annual interest at twelve per cent. per annum, as it accrued by virtue of the special contract, was; but on these installments no interest or damages, for such default, has been allowed, or is claimed.

There is another principle, indeed, to the operation of which is due an exception to the rule, that interest is not recoverable when the payment of the debt has been prevented by law, viz: that interest will be allowed *in all cases* where there is an express contract. *Selleck vs. French,* 1 *Conn.,* 32; 1 *Am. Lead. Cases,* 500.

Therefore, though the payment of a debt be prevented by law, yet if such debt bear interest by agreement, interest is recoverable, unless the use of the money by the debtor has been actually prevented. *Adams vs. Cordis,* 8 *Pick.,* 260; 1 *Am. Lead. Cases, p.* 528.

*In Adams vs. Cordis,* one summoned as trustee, (garnishee) was indebted to the principal defendant, upon a balance of account, which, by agreement, drew interest till paid at five per cent. He continued after service of the writ upon him, to use the money in his business, and was held chargeable with interest up to the time that the money was demanded upon the execution against the fund in his hands. The court say in that case, that "there is an important distinction between cases in which interest is given by way of damages, and those in which it constitutes a part of the debt, as contracts in which there is a promise ¦to pay interest. In the former class, it is obvious, that where one is

summoned as trustee, he is in no fault for not paying, and and as he made no agreement to pay interest, he ought not to be charged with it: in the latter, the interest arising by virtue of the special contract therefor, before the principal falls due, is the debt as much as the principal, and he ought to pay it, unless the use of the money has been actually prevented. "

The late case of *Ward vs. Smith*, 7 *Wallace* 447, we think supports our position: as does also the reasoning of the supreme court of Illinois, in *Mixer vs. Sibley*, reported in 3 Chicago Legal News, No. 11, Dec. 10, 1870.

The judgment of the district court must be modified in respect to the amount therein adjudged due to plaintiff, and the case is remitted to the district court, to ascertain the amount due, in accordance with the rules above stated, and the insertion of the sum so found in the judgment, in lieu of the sum of $27.422.44 aforesaid.