# L. M. HATLESTAD v. MUTUAL TRUST LIFE INSURANCE COMPANY.[1]

July 10, 1936.

No. 30,875.

*R. Vern Eckman* and *Leo J. Burak,* for appellant.

*Warner E. Whipple, George W. Atmore, Jr.,* and *Heitman, Mc-Cabe, Gruber & Clure,* for respondent.

[1]Reported in 268 N. W. 665.

STONE, JUSTICE.

Plaintiff sues as receiver of the Alamoe Realty Company, a Minnesota corporation, now in liquidation. In overruling the general demurrer to the complaint the trial court certified the determinative question as important and doubtful under 2 Mason Minn. St. 1927, § 9498. In consequence, defendant had the right to appeal from the order and has done so.

The facts need not be much gone into. Plaintiff (as receiver of the Alamoe Realty Company) sues not for specific performance but for damages for the breach of an oral contract which defendant is alleged to have made with Alamoe Realty Company whereby the former was to accept and the latter to make a mortgage, on stated terms as to principal, maturity, and interest, on Duluth real estate. No part of the bargain was in writing.

We pass with a contrary assumption the argument for defendant that, as pleaded, the agreement was incomplete because not settling all necessary terms. We assume, what seems to have been the obvious intention to be gathered from the terms as pleaded, that the intended mortgage was to contain the conventional power of sale. Without the aid of such an hypothesis, it might be difficult to get around defendant's position that the agreement was fatally incomplete for failure to fix an essential term. The determinative question is whether the contract is within the statute of conveyances, 2 Mason Minn. St. 1927, § 8459, and the statute of frauds, 2 Mason Minn. St. 1927, § 8460. In order to clear the ground for its consideration, we first remove another proposition.

■ The inflexible rule "once a mortgage always a mortgage" (4 Dunnell, Minn. Dig. [2 ed. & Supps. 1932, 1934] § 6146), and the related doctrine that a deed absolute in form may be shown to be a mortgage where such was in fact the intention of the parties (4 Dunnell, Minn. Dig. [2 ed. & Supps. 1932, 1934] § 6154), are quite independent of statute. They permit an adjudication contrary to what the written forms, without adjudication, would require. They have no application to the question whether an agreement on the one hand to execute and on the other to accept a real estate mortgage in the future is to be enforced either by specific performance

or by an action for damages. Such cases as Jentzen v. Pruter, 148 Minn. 8, 180 N. W. 1004; Grout v. Stewart, 96 Minn. 230, 104 N. W. 966; Stitt v. Rat Portage Lbr. Co. 96 Minn. 27, 104 N. W. 561; Wenzel v. Weigand, 92 Minn. 152, 99 N. W. 633, declaring a deed absolute in form to be in fact a mortgage are irrelevant for present purposes.

■ We decide, with no misgivings, that because the alleged contract on which plaintiff declares was not in writing, as required by 2 Mason Minn. St. 1927, §§ 8459, 8460, it is unenforceable if not void. Pierce v. Clarke, 71 Minn. 114, 73 N. W. 522. Those sections read thus:

"8459. No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering, or declaring the same, or by their lawful agent thereunto authorized by writing. But this section shall not affect in any manner the power of a testator in the disposition of his real estate by will; nor prevent any trust from arising or being extinguished by implication or operation of law.

"8460. Every contract for the leasing for a longer period than one year or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing; and no such contract, when made by an agent, shall be entitled to record unless the authority of such agent be also recorded."

It is easy to identify § 8460 as the lineal descendant of subd. 4 of the fourth section of the original English statute of frauds, within which was any "contract or sale of lands, tenements, or hereditaments, or of any interest in or concerning them." See Sleeth v. Sampson, 237 N. Y. 69, 72, 142 N. E. 355, 356, 30 A. L. R. 1400.

Section 8459 is the more explicit. In substance both sections have been in our law from early statehood. See G. S. 1866, c. 41, title 2.

A necessary premise is that a mortgage of land is no longer a conveyance. That common law effect has been cut down until now, while in form a conveyance, a mortgage creates only a mere lien or security. 4 Dunnell, Minn. Dig ( 2 ed. & Supps. 1932, 1934) § 6145. Our cases there cited, beginning with Hill v. Edwards, 11 Minn. 5 (22), so hold. With us that rule has become statutory. 2 Mason Minn. St. 1927, § 9572, declares that "a mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a fore-closure." Also the creature of statute is the local rule that real estate mortgages are personal property under our laws of descent. 2 Mason Minn. St. 1927, § 8799.

However accurate the concept of the modern mortgage as mere lien or security, the power of sale, if any, is "part of the security" (2 Mason Minn. St. 1927, § 8165) and may be exercised without judicial aid through foreclosure by advertisement. 2 Mason Minn. St. 1927, § 9602, *et seq.* The mortgagee may pass title upon con-dition broken and in default of redemption. That is no less than a power, upon condition subsequent, to convey, not only a mere interest, but also title in fee. An owner's absolute agreement to part with the fee being within the statute, we fail to see why one to part with it on stated conditions is without the same law. With-out more, we cannot escape the conclusion that a mortgage on land is within the statute relating to the creation of an "interest" in lands. A mortgagee may sue successfully to enjoin waste. Upon what theory, unless he has at least an interest in the land? If a mortgage is within the statute, so also is a promise to execute and deliver one in the future.

It is significant that the coverage of the statutes includes a mere "interest" as well as an "estate" in lands. "The word 'interest' is the broadest term applicable to claims in or upon real estate. In its ordinary signification among the men of all classes, it is broad enough to include any right, title, or estate in, or lien upon, real

estate. One who holds a mortgage upon a piece of land for half its value is commonly and truthfully said to be interested, to have an interest, in it." Ormsby v. Ottman, 85 F. 492, 497, 29 C. C. A. 295, 299; 4 Wd. & Phr. (1 ser.) 3699.

Our own cases are said not to have answered the question categorically. Gardner v. McClure, 6 Minn. 167, 173 (250), came near doing so. It was a case of attempted mortgage by deposit of title deeds, accompanied by a memorandum in writing. But the latter was not "sufficient in its terms and manner of execution to create the interest or estate in the lands, intended by the parties, * * *. It is not executed with the forms required by the statute to pass an interest in real estate." Throughout the opinion the fact that the transaction did not comply with the statute of frauds was stressed as a reason for denying the intended mortgage effect as such. The case is cited in support of the statement that "in a number of states, * * * the doctrine that a deposit of title deeds creates an equitable mortgage is rejected as being contrary to the statute of frauds." 27 C. J. p. 229, § 230.

Jones v. Tainter, 15 Minn. 423, 425 (512), held that a pre-emptor's agreement later to execute a mortgage to secure a loan of money furnished him for the purpose of paying for the land "is not such an agreement as is referred to" in the act of congress prohibiting the pre-emptor from making directly or indirectly, "any agreement or contract, * * * by which the title he might acquire from the government of the United States shall inure in whole or in part to the benefit of any person except himself." The act was interpreted not to prohibit a mere mortgage or lien but only a contract to make the pre-emption inure directly and absolutely to the benefit of another than the pre-emptor. "The question is," said the court [15 Minn. 426], "was there any contract or agreement by which the pre-emptor fixed this result? * * * In other words, did the pre-emptor contract or agree to do anything which, when done, would pass the title, in whole or in part, to another, so that the pre-emption would, as to such whole or part, be a mere conduit of the title." The answer was negative. Whether the mortgage, if and when

given, would have created an "interest" or more, or less, in the land was not considered.

The decision in Irvine v. Armstrong, 31 Minn. 216, 17 N. W. 343, is easily misinterpreted as one involving an oral agreement for a mortgage. But, as appears from the statement of facts preceding the opinion, the bargain for the mortgage "was in writing, signed by Armstrong and wife." (That statement we have verified by reference to the original printed record or "paper book.") The issue most contested at the trial was whether the "transaction" was usurious. The reference, "it was entirely oral," in the opening paragraph of the opinion was to the testimony on that issue and not the "transaction." "Testimony" rather than "transaction" was antecedent of the pronoun "it." The case is irrelevant to the instant problem. The specific performance awarded was of a complete, unambiguous written contract and not of an oral agreement.

In Butler Bros. v. Levin, 166 Minn. 158, 207 N. W. 315, we had no occasion to decide anything concerning the statute of frauds. As *dictum,* frankly so indicated, we referred to Sleeth v. Samson, 237 N. Y. 69, 142 N. E. 355, 30 A. L. R. 1400, as explicitly deciding the question presently determinative. Our attempt was simply to indicate, without deciding it, the then presence of that question.

Sleeth v. Sampson, 237 N. Y. 69, 142 N. E. 355, 30 A. L. R. 1400, is here sought to be distinguished upon what is said to be the New York rule that a mortgage is still to some extent a conveyance. We but note that Mr. Justice Cardozo said [237 N. Y. 72]:

"One who promises to make another the owner of a lien or charge upon land, promises to make him the owner of an interest in land, and this is equivalent in effect to a promise to sell him such an interest."

Hence, whatever the local "background of prior decisions" in New York, the decision seemingly went upon the hypothesis that a real estate mortgage was but "a lien or charge."

The statute, 2 Mason Minn. St. 1927, § 8459, has no application to either the creation, transfer, surrender, or extinguishment of an estate or interest in lands which results "by act or operation of

law." That explains why, without writing, a mortgage is extinguished by payment of the debt, or in a proper case by merger with the fee. So also, mere transfer of the note secured by a mortgage is in law an assignment of the latter. 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 6276; Kersten v. Kersten, 114 Minn. 24, 129 N. W. 1051. And the vendor's lien of the common law is "created by the law and not by the parties." Hence it is considered not within the statute of frauds. 27 C. J. p. 229, § 229. Waiver, however occurring, may extinguish a mechanic's lien. Burns v. Carlson, 53 Minn. 70, 72, 54 N. W. 1055. Such a lien "may be lost or abandoned or discharged." That result follows automatically, without any writing, from any act of the parties adequate to the purpose. If there is no writing expressing the intention and accomplishing the stated purpose, it is the "operation of law" on the acts of the parties that is the efficient cause of the result.

Normally, mutual promises are the consideration each for the other. A mere promise of an act, not otherwise within the statute, is not rendered so simply because the result of the act, as an "operation of law," will be to affect an interest in land. Vought v. Porter, 168 Minn. 43, 209 N. W. 642. In similar fashion it is the operation of legal rules on accomplished facts, rather than upon the agreement of parties, which is but one of the facts, that results in decrees establishing equitable mortgages. Part performance characterizes such cases. See Sprague v. Cochran, 144 N. Y. 104, 38 N. E. 1000. But the law, particularly an applicable, special statute, may prevent any mortgage. That happened in Williams v. Williams, 192 Minn. 438, 257 N. W. 1, and Renville State Bank v. Lentz, 171 Minn. 431, 214 N. W. 467.

As to the statute of frauds, we need not again repeat the distinctions made in Hewitt v. Parmenter, 181 Minn. 454, 232 N. W. 919, referring to two other classes of action. One consists of those wherein a cause of action has been sustained, not on a contract within the statute, but on a quasi-contractual obligation arising out of the transaction. The other included the situations wherein performance or willingness to perform a contract, unenforceable under the statute, has been held a defense to such an action.

In Kersten v. Kersten, 114 Minn. 24, 26, 129 N. W. 1051, is no suggestion that the mortgage which was assigned directly from husband to wife did not create an interest in land. Notwithstanding the statute (2 Mason Minn. St. 1927, § 8621) invalidating any "contract between husband and wife relative to the real estate of either, or any interest therein," the assignment of the mortgage from spouse to spouse was held good. The real ground of decision was that the mortgage was "but an incident" of the debt and that assignment of the latter carried with it the security. In other words, as far as concerns the interest in land created by the mortgage, the transfer thereof was an operation of law resulting from the valid transfer of the debt. Here is a good place to observe, incidentally, that it helps not at all one way or the other that a mortgage is a chose in action. So also is an executory contract for the conveyance of land, which but illustrates the obvious fact that the contractual obligations inhering in a chose in action affect land and interests therein the same way as they do chattels.

Our conclusion is in agreement with the law elsewhere. "No particular form is necessary to constitute a mortgage. It must be in writing, and must clearly indicate the creation of a lien, specify the debt to secure which it is given, and the property upon which it is to take effect." 1 Jones, Mortgages (8 ed.) § 75.

■ This being an action for damages for breach of contract, the doctrine of part performance, which may aid a suit for specific performance, is of no help to plaintiff. That has long been settled law. Hewitt v. Parmenter, 181 Minn. 454, 232 N. W. 919.

■ From that rule plaintiff seeks escape by insistence that its complaint, even though failing to state a case for damages, does make one for specific enforcement on the ground of part performance. Taking position on Freeman v. Paulson, 107 Minn. 64, 66, 119 N. W. 651, 652, 131 A. S. R. 438, the argument in substance is that "the question is whether the facts stated entitle plaintiff to equitable relief." So assuming, we hold that the complaint fails to plead the kind of part performance necessary to take the case out of the statute. We assume also that part performance, if ade-

quate, is available under either the statute of conveyances (§ 8459) or the statute of frauds (§ 8460).

Here more facts must be stated. While in the ownership of the Alamoe Realty Company, a building on the property had been damaged by fire in 1931. Of the insurance collected, some $6,000 appears to have been paid defendant, under the terms of the mortgage then owned by it. August 1, 1932, that mortgage was foreclosed and the property bid in by defendant for so much less than the debt that the defendant later procured a deficiency judgment against the realty company for upwards of $5,000. The oral agreement for a new mortgage was made "on or about" November 12, 1932. The claim is that defendant agreed to refinance the property, taking the promised new mortgage as security. All the part ,performance claimed for the realty company is that it agreed to and did procure a prospective tenant and a contractor who agreed to make repairs to cost $3,200. There is no claim that a lease was actually made with the one willing to take a lease, or that any repairs were made.

The period of redemption did not expire until August 1, 1933. The complaint avers that "after November 12, 1932, and prior to April 4, 1933," the realty company having notified defendant that it had secured a tenant and was ready to make the repairs or have them made and otherwise was "ready, willing, and able to fully perform the contract," defendant repudiated the whole bargain. Procuring the prospective tenant and readiness to make the repairs are not the kind of part performance required to take the case out of the statute. That is because the whole was equivocal and as reasonably referable to the realty company's then title and possession as to any new contract.

Taking possession of land (of itself usually not enough) pursuant to an oral agreement for its conveyance ordinarily is an important element of the part performance which takes a case out of the statute. Kociemba v. Kociemba, 146 Minn. 62, 177 N. W. 927. But such possession must *of itself* "indicate the beginning of a new interest and be shown to be pursuant to the oral contract. There must be no equivocation and uncertainty in the case. If the possession can naturally and reasonably be accounted for otherwise than

by a contract for the purchase of the land, it will not avail." Bresnahan v. Bresnahan, 71 Minn. 1, 7, 73 N. W. 515, 518. The holding there was that "possession by a son, even if he make valuable improvements, raises no presumption that it was taken pursuant to any contract of purchase," because it was as easily explained by "the confidence existing between parent and son."

That rule and its present application are required by the rationale of the doctrine of part performance, whether as expounded in the leading English case of Maddison v. Alderson [1883] L. R. 8 App. Cas. (H. of L.) 467, or as extended to "a broader ground" by other English and American cases. See 2 Pomeroy, Eq. Rem. (2 ed.) (5 Pom. Eq. Jur.) § 817.

In Maddison v. Alderson, it was said that [p. 479] "an act which though in truth done in pursuance of a contract, admits of an explanation without supposing a contract, is not in general admitted to constitute an act of part performance taking the case out of the statute of frauds." That explains why usually the payment of purchase money is not of itself enough. The ordinary payment is an "equivocal act, not (in itself), until the connection is established by parol testimony, indicative of a contract concerning land." So also, continuance in possession by a lessee after the end of his term is not in itself evidence of an agreement to renew the lease since the act may point to a tenancy at will equally as well as an express agreement.

Upon handicaps resulting to the Alamoe Realty Company from the depression and its resulting inability to finance its property otherwise, there is a claim that the statute is being used by defendant to aid rather than prevent fraud. Such argument is not to be allowed to break down the "limits intended to prevent a recurrence of the mischief which the statute was passed to suppress." Maddison v. Alderson [1883] L. R. 8 App. Cas. (H. of L.) 467, 478. What is more, the argument misconceives what is meant by the fraud which courts say cannot be perpetrated by invocation of the very statute designed to prevent fraud. Mr. Pomeroy, summarizing decisions, puts it this way:

"If the defendant knowingly permits the plaintiff to do acts in part performance of the verbal agreement, acts done in reliance on the agreement, which change the relations of the parties and prevent a restoration to their former condition, it would be a virtual fraud for the defendant to interpose the statute as a defense, and thus to secure for himself the benefit of the acts of part performance, while the plaintiff would be left not only without adequate remedy at law, but also liable for damages as a trespasser."

Here no change of the legal status of either party in respect to the property is shown to have taken place. That is true, notwithstanding that, there being no redemption, defendant got title August 1, 1933, some months after it repudiated the contract. It is beyond our power to add to or detract from the legal rights of the parties or alter their status before the law, because of the hardships of the depression and the mortgagor's resulting inability to redeem. All that, without more, cannot make adequate what otherwise was inadequate part performance to take the case out of the statute. We hold, therefore, that in no view has the complaint stated a cause of action.

Order reversed.