W. G. HECHT v. RUTH L. ANTHONY AND ANOTHER.[1]

February 10, 1939.

No. 31,742.

[1]Reported in 283 N. W. 753.

*Frundt & Morse,* for appellants.

*Frank E. Dougherty, John W. Flynn,* and *Putnam & Carlson,* for respondent.

HOLT, JUSTICE.

Plaintiff is married to a sister of defendant Thomas Anthony. The premises here involved is a 160-acre farm in Martin county, which prior to 1928 had been mortgaged to Northwestern Mutual Life Insurance Company, by the owners, defendant Thomas Anthony, his mother, brother, and sisters, including plaintiff and his wife. It was the homestead of the Anthony family and had so been for a long time. For default the mortgage was foreclosed August 13, 1928, and bid in by the mortgagee for $7,709.53. The sheriff's certificate of sale was assigned to plaintiff and duly recorded a few days before the time for redemption expired. This was evidently done because none of the Anthonys were able to redeem and plaintiff desired to save the equity in the farm for his relatives. No redemption was made. Plaintiff acquired a good title, but defendant Thomas Anthony's possession was not disturbed, and in June, 1930, he married defendant Ruth L. Anthony, and they have ever since made their home upon this farm. The court's findings thus tersely state the facts of importance (eliminating the transactions plaintiff had with the president of the Truman Bank and the use of the title of the farm to secure the funds he obtained to purchase the sheriff's certificate) :

"9. That in June, 1933, the plaintiff sold and conveyed said land to the defendants, and at their request inserted the name of the defendant Ruth L. Anthony only in said Stockman deed, delivered said deed to the said Ruth L. Anthony, thereby accomplishing the conveyance to her and passing all title to her in and to said land.

"10. That the consideration for said conveyance, and the purchase price of said land, was the amount plaintiff had paid, or obligated himself to pay, in purchasing said foreclosure certificate,

and the amounts paid by him for delinquent interests and taxes. That defendants agreed to pay said purchase price as follows: By obtaining a loan from the Federal Land Bank of St. Paul, Minnesota, and the Land Bank Commissioner, for the largest amounts possible, by applying the proceeds thereof to the payment of the Stockman mortgage, the balance due said bank, and the excess, if any, to plaintiff in liquidation of the balance due him on said purchase price.

"11. That it was agreed between plaintiff and defendants that, if the amount paid plaintiff, as aforesaid, was insufficient to pay him in full the amounts due him, as aforesaid, defendants would execute and deliver to plaintiff a mortgage on said land, subject only to the mortgage to the Federal Land Bank of St. Paul, Minnesota, and the mortgage to the Land Bank Commissioner, to secure the remainder of said indebtedness, said mortgage to plaintiff to be due in five years, draw interest at the rate of six per cent per annum, said interest payable annually."

There is no dispute that defendants obtained a mortgage from the Land Bank for $6,000 and one from the commissioner of $3,000, and that after applying the proceeds on the purchase price—that is, the indebtedness to plaintiff, at least $1,822.08 was still due him. Defendants refused to give the mortgage after obtaining the deed. This action followed for specific performance. The court ordered judgment against defendants for $1,822.08 and interest thereon at six per cent per annum from July 1, 1933, such judgment to be a special lien upon said farm subject only to said mortgages to the Federal Land Bank and its commissioner, the judgment not to be enforced prior to July 1, 1938. Defendants moved for amended findings or a new trial, and appeal from the order denying their motion.

The assignments of error challenge especially the agreement to execute the mortgage to plaintiff to secure the balance of the purchase price. We think this is the only material fact as to which the testimony is in disagreement. Counsel for defendants make some technical objections to the complaint but do not press them,

therefore they need not be considered. Nor do they seriously contend that the court's finding that defendants agreed to execute the mortgage to plaintiff for the balance of the purchase price, to-wit: $1,822.08, can be disturbed. It is not reasonable to believe that plaintiff made a gift to defendants of the large sum he had paid out to secure title to the farm after it was lost to defendants by the mortgage foreclosure and their inability to redeem.

The real contention of counsel is that the court upon the facts found could neither decree specific performance nor impress a vendor's lien on the premises. It is true that an agreement to give a real estate mortgage is within the statute of frauds. Hatlestad v. Mutual Trust L. Ins. Co. 197 Minn. 640, 268 N. W. 665; 2 Mason Minn. St. 1927, §§ 8456 and 8460. However, § 8459 excepts an estate or interest created by operation of law. Equity may specifically enforce an oral contract void under the statute of frauds where there has been full performance by the party seeking the relief and it would work a fraud to deny the same. Upon facts similar to those here found, specific performance was decreed in Hughes v. Mullaney, 92 Minn. 485, 100 N. W. 217. See also Foster Lbr. Co. v. Harlan County Bank, 71 Kan. 158, 80 P. 49, 114 A. S. R. 470, 6 Ann. Cas. 44; Sprague v. Cochran, 144 N. Y. 104, 38 N. E. 1000; Baker v. Baker, 2 S. D. 261, 49 N. W. 1064, 39 A. S. R. 776. In the Sprague case the court said [144 N. Y. 113]:

"It is not necessary that such transactions or agreements as to lands should be in writing in order to take them out of the operation of the Statute of Frauds for two reasons, first, because they are completely executed by at least one of the parties and are no longer executory, and, secondly, because the statute by its own terms does not affect the power which courts of equity have always exercised to compel specific performance of such agreements."

In the Hatlestad case, 197 Minn. 640, 646, 268 N. W. 665, 668, it is stated that "the vendor's lien of the common law is 'created by the law and not by the parties.' Hence it is considered not within the statute of frauds."

Defendants contend that since Hughes v. Mullaney, 92 Minn. 485, 100 N. W. 217, was decided, the homestead statute was changed by the Revision of 1905 to further protect the owners thereof. 2 Mason Minn. St. 1927, § 8336, exempts homesteads from all liens (with exceptions not here material) "not lawfully charged thereon in writing." Renville State Bank v. Lentz, 171 Minn. 431, 214 N. W. 467; Kingery v. Kingery, 185 Minn. 467, 241 N. W. 583, are relied on for the proposition that neither an equitable lien nor a vendor's lien may be decreed on a homestead. The facts here are different from the facts in either of the cases just cited. In the case at bar the farm was not the statutory homestead of defendants when the agreement was made. They were in possession without any legal or equitable right. They neither pleaded nor proved any right to possess it as a home. They were occupying by sufferance. The plaintiff's right to the vendor's lien was simultaneous with the conveyance and part of that transaction. Defendants' statutory homestead attached upon the execution of the agreement pursuant to which the deed to Ruth L. Anthony was delivered. Plaintiff has fully performed, and defendants have partly performed by mortgaging as agreed and by the application of the proceeds. There only remains the execution to plaintiff of the purchase money mortgage for the $1,822.08 balance of the purchase price. It would seem clear that in this situation defendants are not in position to set up as a defense a statutory homestead right in this farm. In Renville State Bank v. Lentz, 171 Minn. 431, 214 N. W. 467, the bank loaned defendant money upon the fraudulent promise to purchase a residence property and secure the loan by a first mortgage upon the property purchased. The loan was first evidenced only by the promissory note of defendant. Judgments were obtained for the amounts loaned, and these were sought to be declared liens upon the homestead. It was held that the findings that the allegations of the complaint were true did not authorize the imposition of such liens. There the plaintiff did not convey or cause to be conveyed the residence to defendant. It was also there a promise to give the mortgage in the future. The decision also recognizes [171 Minn. 433] "that the homestead exemption statute is not in derogation

of the lien-creating power of equity." The Kingery case, 185 Minn. 467, 241 N. W. 583, was based upon the oral promise of one spouse only to mortgage the homestead to secure a loan to pay off an existing mortgage thereon. There was no fraud connected with the transaction. The contract to mortgage the homestead by one spouse alone was of course void, and there were no equities upon which the lender could be decreed a lien on the homestead.

It is true that a vendor's lien is not favored, but we still recognize and enforce it where clearly applicable. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 10054. In Wisconsin it has been held cut off by statute where prior to the death of a homestead owner the right thereto had not been enforced. Berger v. Berger, 104 Wis. 282, 80 N. W. 585, 76 A. S. R. 877.

Defendants rely on Hatlestad v. Mutual Trust L. Ins. Co. 197 Minn. 640, 268 N. W. 665, and the case therein cited of Sleeth v. Sampson, 237 N. Y. 69, 142 N. E. 355, 30 A. L. R. 1400. In the Hatlestad case it is clear that the facts as to part performance are altogether different from those here found. Moreover, the action was one for damages for breach of an alleged oral contract wherein it was said [197 Minn. 647]: "The doctrine of part performance, which may aid a suit for specific performance, is of no help to plaintiff." So in Sleeth v. Sampson, there was an existing indebtedness of some $1,200 from Sampson to Sleeth when the former applied for a loan of $100. He offered to give a mortgage on the farm if he could get the loan. Then some money was handed Sampson, and Sampson handed the deed he received when he bought the farm and abstract of title, with the remark [237 N. Y. 72]: "You look these over, and see what you can do, and we will go down to the lawyer's in a few days and draw this up." Nothing more was said and done, and a few weeks later Sampson died. Then the action was brought against his heirs for specific performance. It of course failed. The mere payment of some money without more than receiving the papers mentioned was not such part performance as to warrant specific performance.

The order is affirmed.