In re Dianna L. DEPPE, f/k/a Dianna L. Schaefer, Debtor.

Edwin L. SCHAEFER and Blanche I. Schaefer, Plaintiffs,

v.

Dianna L. DEPPE, f/k/a Dianna L. Schaefer, Defendant.

Bankruptcy No. 4–96–3133.

Adversary No. 4–97–0038.

United States Bankruptcy Court, D. Minnesota.

Dec. 22, 1997.

Paul J. Simonett, Farrish, Johnson & Maschka, Mankato, MN, for Plaintiff.

Jane S. Welch, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN, for Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled adversary proceeding came on for hearing before the undersigned on October 29, 1997 on the motion of the Debtor–Defendant, Dianna L. Deppe ("Defendant"), for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056. Appearances were as noted on the record. After carefully considering the arguments of counsel, the Court has determined that Defendant's motion for summary judgment should be granted.

### UNDISPUTED FACTS

For purposes of this motion, the relevant facts of the case are undisputed.

In July of 1992, the Defendant and her then husband, Mark Schaefer, borrowed the sum of $55,000.00 from Mark Schaefer's parents, Edwin & Blanche Schaefer ("Plaintiffs"), to assist them in avoiding the cancellation of a contract for deed on their home located at 3308 West 102nd Street, Bloomington, Minnesota. To memorialize this transaction, Mark Schaefer drafted a promissory note in which he and the Defendant promised to pay the Plaintiffs $55,000.00 plus interest at an annual rate of 9% until the debt was repaid. The promissory note made no reference to, and did not purport to effect, a grant to the Plaintiffs of a mortgage on the homestead. Ultimately, the Defendant and Mark Schaefer made only one payment under the promissory note in the amount of $1,518.90.

On February 14, 1995, the marriage between the Defendant and Mark Schaefer was dissolved in Minnesota state court. Pursuant to the divorce decree, the Defendant was granted "all right, title, and interest, free and clear of any interest by [Mark Schaefer], in and to the homestead property located at 3308 West 102nd Street, Bloomington, Minnesota." The divorce decree further provided that the Defendant "will be responsible for all debt in relation to the homestead, including the debt to [the Plaintiffs]...." This award was subsequently amended to

make the Defendant responsible for $58,-013.00 of the amount owed to the Plaintiffs, with Mark Schaefer responsible for $6,687.00. Although the divorce decree provided that the Defendant would be responsible for certain debt in relation to the homestead, neither the original divorce decree nor any one of the amended decrees[1] imposed a lien against the homestead to secure the Defendant's payment of the promissory note.

On May 16, 1996, the Defendant filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. On Schedule C of her bankruptcy petition, the Defendant listed the full value of the homestead property as exempt under Minn.Stat. § 510.01. On Schedule F, she listed Plaintiffs' claim as an unsecured nonpriority debt. On June 6, 1996, the Plaintiffs filed a proof of unsecured claim in the amount of $76,915.90. On November 8, 1996, after the Plaintiffs filed an objection to the confirmation of the Defendant's proposed Chapter 13 plan, the Defendant voluntarily converted her Chapter 13 case to Chapter 7. On February 11, 1997, the Defendant was granted a discharge pursuant to 11 U.S.C. § 727.

On February 18, 1997, the Plaintiffs commenced the present adversary proceeding. In their complaint, the Plaintiffs seek a determination that their claim against the Defendant is secured by an equitable mortgage on the Defendant's homestead, alleging that the Defendant and Mark Schaefer agreed to provide the Plaintiffs with a mortgage against the property to secure their debt under the promissory note. On March 21, 1997, the Defendant filed an answer to the Plaintiffs' complaint, asserting various defenses to the Plaintiffs' claim to an equitable mortgage. In particular, the Defendant asserts that an equitable mortgage cannot be created on the homestead because the Plaintiffs' claim to such is based solely on an oral promise to deliver a mortgage in the future; i.e., there is no document purporting to provide Plaintiffs with security for payment of the personal debt.[2] For the sole purpose of resolving the current motion, the parties have stipulated to the fact that Plaintiffs, Defendant and Mark Schaefer all intended that Defendant and Mark Schaefer would provide the Plaintiffs with a mortgage on the property at some time in the future.

## CONCLUSIONS OF LAW

### I. SUMMARY JUDGMENT STANDARDS

Summary judgment is governed by Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Bankruptcy Rule 7056. Federal Rule 56 provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED.R.CIV.P. 56(c). The moving party on summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the moving party is the plaintiff, it carries the additional burden of presenting evidence that establishes all elements of the claim. *Id.* at 324, 106 S.Ct. at 2553; *United Mortg. Corp. v. Mathern (In re Mathern),* 137 B.R. 311, 314 (Bankr.D.Minn.1992), *aff'd,* 141 B.R. 667 (D.Minn.1992). The burden

---

1. The February 14, 1995 divorce decree was subsequently amended on March 13, 1995, May 31, 1995, and March 21, 1996.

2. Defendant also asserted that: (1) it would be improper for the Court to impose an equitable mortgage in this case because the Defendant's debt to the Plaintiffs has been discharged; (2) the Plaintiffs are estopped from arguing that they are entitled to an equitable mortgage; (3) even if the Plaintiffs are entitled to an equitable mortgage against the homestead property, such property is exempt and the equitable mortgage would therefore be avoidable by the Defendant as a "judicial lien" under 11 U.S.C. § 522(f)(1)(A); and, finally (4) even if the Plaintiffs are entitled to an equitable mortgage against the homestead property, the mortgage would be avoidable by the Defendant under the strong-arm provisions of §§ 522(g) & (h) and 544(a)(3). Because I have determined that the lack of a writing requires judgment for Defendant, I need not, and do not, address these issues.

then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). This responsive evidence must be probative, and must "do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Because the material facts of the present case are undisputed, there exists no genuine issue of material fact and all that remains to be determined is whether the Defendant is entitled to judgment as a matter of law.

## II. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Plaintiffs in this case seek a determination that their claim against the Defendant is secured by a lien against the Defendant's homestead in the form of an equitable mortgage.[3] In response, the Defendant argues that, as a matter of law, an equitable mortgage cannot be created under the facts of this case because the claim to an equitable lien on the homestead is based solely on an alleged, and for purposes of this motion admitted, oral promise to subsequently deliver a written mortgage.

■ It is well accepted that Congress has left the matter of the creation of property interests in bankruptcy cases to be determined by applicable nonbankruptcy law. *Cf. Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) (stating that, under the Bankruptcy Act of 1898, Congress had generally left the determination of property rights in the assets of a bankrupt's estate to state law). Thus, I look to Minnesota law to resolve the issue at hand.

■ The applicable statute is Minnesota's homestead exemption statute which specifically provides that:

> The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account *of any debt not lawfully charged thereon in writing,*
>
> . . . .

MINN.STAT. § 510.01 (1986) (emphasis added).[4] This statute has long been part of Minnesota jurisprudence.

In two early cases, the Minnesota Supreme Court imposed an equitable mortgage against a homestead under circumstances quite similar to the one at hand. In *Irvine v. Armstrong,* 31 Minn. 216, 17 N.W. 343 (1883), the plaintiff loaned money to defendants in order that they could refinance their homestead. The parties entered into a written agreement for the execution of a new mortgage to plaintiff, which both husband and wife signed. Later, defendants refused to give such a mortgage, and instead they conveyed the property to a non-bona fide purchaser. Plaintiff sought specific performance of the agreement to provide the mortgage. The court held that, damages being

3. Plaintiffs do not claim that they are entitled to the imposition of a constructive trust, the grant of which would require a showing of unjust enrichment through fraud, duress, or similar means, none of which have been alleged. *First Nat'l Bank v. Ramier,* 311 N.W.2d 502, 504 (Minn.1981) (constructive trust not imposed where lender could have obtained a written security agreement and merely failed to do so); *Wright v. Wright,* 311 N.W.2d 484, 485 (Minn. 1981) (constructive trust not available in absence of fraud, duress, etc.).

4. Minnesota's statute of frauds also provides that:

> *No* estate or *interest in lands,* other than leases for a term not exceeding one year, nor any

> trust or power over or concerning lands, or in any manner relating thereto, *shall hereinafter be created,* granted, assigned, surrendered, or declared, *unless by act or operation of law, or by deed or conveyance in writing,* subscribed by the parties creating, granting, assigning, surrendering, or declaring the same, or by their lawful agent thereunto authorized by writing. . . .

MINN.STAT. § 513.04 (1990) (emphasis added). Since a mortgage on real property constitutes an "interest" in land, it falls within the purview of this statute of frauds and therefore must be in writing to be valid. *Hatlestad v. Mutual Trust Life Ins. Co.,* 197 Minn. 640, 643, 268 N.W. 665 (1936).

an inadequate remedy, the agreement would be enforced in equity. Later, in *Hughes v. Mullaney*, 92 Minn. 485, 100 N.W. 217 (1904), the Minnesota Supreme Court imposed an equitable lien on the defendants' homestead based solely on the defendants' oral promise to deliver a mortgage to plaintiff after plaintiff advanced money to assist them in purchasing a new home. The trial court had found that it was the parties' intention to create a loan transaction, to be secured by the property, rather than a gift. Relying once again on the rule that an oral agreement to provide security is not compensable in damages, the Minnesota Supreme Court imposed an equitable lien and allowed its foreclosure. In *Soukup v. Wenisch*, 163 Minn. 365, 204 N.W. 35 (1925), the court refused to impose a lien on real property purchased by the defendant with the plaintiff's money in the absence of a writing or proof that the parties had agreed to the furnishing of a mortgage, but the court distinguished cases such as *Irvine* and *Mullaney* where there was proof of an unfulfilled promise to give security. Thus, it appeared to continue the vitality of *Irvine* and *Mullaney*.

In 1905, one year after *Mullaney* was decided, the predecessor to current Minn.Stat. § 510.01 was amended by the addition of the words "not lawfully charged thereon in writing." In a series of three cases which followed, the Minnesota court effectively overruled *Mullaney*, distinguished *Irvine*, explained *Soukup* and established the rule that under § 510.01 an oral promise to provide a mortgage upon a homestead is not enforceable through an equitable lien, regardless of the parties' intent.

If there was room after *Soukup* for an argument that *Irvine* and *Mullaney* remained good law even after the 1905 amendment to Minn.Stat. § 510.01, it was virtually eliminated in *Renville State Bank v. Lentz*, 171 Minn. 431, 214 N.W. 467 (1927), a case decided on two years after *Soukup*. In *Lentz*, the husband borrowed money from the plaintiff, fraudulently promising to pro-

vide a mortgage on a homestead to be purchased by him and his spouse. He gave the plaintiff his promissory note, but later both he and the spouse refused to deliver a written mortgage. Defendants urged both the homestead statute, the predecessor to Minn. Stat. § 510.01, and the statute of frauds, the predecessor to Minn.Stat. § 513.04, in defense. Referring to the 1905 amendment to the homestead statute, the court held *Mullaney* inapplicable because *Mullaney* was decided before the change in statutory language. The court determined that the husband's oral promise to give a mortgage on the homestead would not be enforced in equity because the debt was not "lawfully charged thereon in writing" (*Id.* at 432, 214 N.W. 467) and found it unnecessary to address the question of whether the statute of frauds applied.[5] Going further, the court held that while the "argument that the homestead exemption statute is not in derogation of the lien creating power of equity is correct," that doctrine was applicable only in cases where a constructive trust should be imposed. "Here we have a very different case, and the effort is to subject the homestead to a lien in lieu of one actually promised contractually.... In the instant case, all we have is the violation of a promise to do something in the future. The statute prevents the artificial creation of a lien on a homestead merely to make good such an undertaking." *Id.* at 433, 214 N.W. 467.

A few years later, in *Kingery v. Kingery*, 185 Minn. 467, 241 N.W. 583 (1932), the Minnesota Supreme Court dealt *Irvine, Mullaney*, and any expansive reading of *Soukup* a further blow. In *Kingery*, plaintiff gave his mother money to allow her to refinance mortgages on her homestead based solely on her promise to give him a mortgage. She owned the land, but both parents were living on it at the time. Plaintiff sought the imposition of an equitable lien or, at the very least, subrogation to the position of the refinanced mortgagors. The court refused, holding that "the oral agreement by defendant to give

---

**5.** In *Butler Bros. Co. v. Levin*, 166 Minn. 158, 161, 207 N.W. 315 (Minn.1926), the court, in dicta, had appeared to apply the predecessor to Minn.Stat. § 513.04 to a case where one spouse had orally promised to provide a mortgage on a homestead in return for a loan. *Lentz* made no mention of *Levin*, a case which had been decided only one year earlier.

plaintiff security on the homestead was wholly void" and equitable subrogation was therefore unavailable. *Id.* at 470, 241 N.W. 583. The court said:

> That a loan made to enable the borrower to purchase or pay for a homestead does not give the lender a right to a lien upon the homestead, even if there is an oral agreement to give security thereon, is now settled by *Soukup v. Wenisch* ... and *Renville State Bank v. Lentz, Jr.*, supra. One who advances money to another to be used for paying all or part of the purchase price of a homestead should stand in fully as favorable a light in equity as one who advances money to pay a mortgage on the homestead. Yet, under our homestead law, neither of them acquires any lien on the homestead, unless given by written mortgage or security executed by both husband and wife, if both are living.

*Id.* at 471, 241 N.W. 583.

Finally, in *Hatlestad v. Mutual Trust Life Ins. Co.*, 197 Minn. 640, 268 N.W. 665 (1936), a non-homestead case, the court limited *Irvine* to its facts. *Irvine*, the court held, was not a case involving an oral agreement for a mortgage, but was rather a case where the "specific performance awarded was of a complete, unambiguous written contract and not of an oral agreement." *Id.* at 645, 268 N.W. 665.

[■■■] All of this served as the backdrop for the Minnesota Supreme Court's decision in *Wright v. Wright*, 311 N.W.2d 484 (Minn. 1981), a case quite directly on point. In *Wright*, the son's parents loaned the son and his then-spouse funds with which to purchase their homestead. A dissolution ensued and, as is the case here, the wife received the homestead and later refused the parents' request for a mortgage. The court held that the parents were not entitled to immediate repayment of the loan, nor to an equitable lien against the property. The case is distinguishable from the one at hand, in that the trial court had determined that the parents intended a gift, not a loan secured by the property. Nevertheless, the language of the decision is broad:

> In its reliance on Minn.Stat. §§ 510.01 and 513.04 (1980) together with the decisions in *Renville State Bank v. Lentz* ... and *Kingery v. Kingery* ... the trial court held that no lien, either equitable or otherwise, may attach to homestead property without a written instrument evidencing the debtor's intent to grant such a lien.

> \* \* \*

> [O]ur decision in *Kingery v. Kingery* ... firmly establishes the principle that a loan made to enable a borrower to purchase or pay for a homestead does not give the lender a right to a lien upon the homestead even if there is an oral agreement to give security thereupon.

*Id.* at 486–87. Accordingly, because, in the case before this court, Plaintiffs' claim to a mortgage on the Defendant's homestead rests solely on an oral promise to furnish the same, it cannot be sustained. This is true, even though currently the property is the homestead of only one of the two spouses.[6]

---

6. Under Minnesota law, a party's conduct in reliance on an oral contract may constitute sufficient part performance to avoid the operation of the statute of frauds under two different theories: the "fraud" theory and the "unequivocal reference" theory. *Ehmke v. Hill*, 236 Minn. 60, 68–69, 51 N.W.2d 811 (1952); *Burke v. Fine*, 236 Minn. 52, 55, 51 N.W.2d 818 (1952). If Minn. Stat. § 513.04 has application to this case, Plaintiffs are not entitled to specific performance of the oral mortgage contract under either of these two theories. In order for a party's performance under an oral contract to warrant enforcement of the contract under the "fraud" theory, the party's performance "must have been performed in such a manner and by the rendering of services of such a nature or under such circumstances that the beneficiary cannot properly be compensated in damages." *Ehmke*, 236 Minn. at 69, 51 N.W.2d 811. This test has been held to be satisfied in cases where the party seeking enforcement of an oral agreement has performed "peculiarly personal services which are not subject to pecuniary measure" and "to such an extent that it would be a fraud on [the] part of the other party to set up its invalidity." *See id.* at 70, 51 N.W.2d 811; *Brown v. Hoag*, 35 Minn. 373, 377, 29 N.W. 135 (1886). "The fact that the plaintiff does not get what he was to receive under the void agreement is not sufficient loss or injury to constitute fraud." *Happel v. Happel*, 184 Minn. 377, 383, 238 N.W. 783 (1931). In this case, the Plaintiffs' loss does not reach the level of "unjust and irreparable injury" required under the "fraud" theory of part performance. Moreover, the Plaintiffs' act of loaning funds to the Defendant and Mark Schaefer is not conduct that is "unequivocally referable" to the existence of an

■■■] Plaintiffs cite *Proulx v. Hirsch Bros., Inc.*, 279 Minn. 157, 155 N.W.2d 907 (Minn.1968) and *Miller v. Anderson*, 394 N.W.2d 279 (Minn.App.1986). These cases and many, many others deal with a different scenario, the well established principle that a court of equity may treat an instrument of conveyance that fails to create a valid mortgage as an equitable mortgage where it can be shown that the parties to the transaction intended it to create a mortgage. *See e.g., First Nat'l Bank v. Ramier*, 311 N.W.2d 502, 503 (Minn.1981); *Ministers Life and Cas. Union v. Franklin Park Towers Corp.*, 307 Minn. 134, 239 N.W.2d 207, 210 (1976) ("The controlling legal principle ... is that a deed absolute in form is presumed to be, and will be treated as a conveyance unless both parties in fact intended a loan transaction with the deed as security only."). Under this principle, therefore, an equitable mortgage may exist where a deed absolute on its face was in fact given as security. The test for the creation of an equitable mortgage is whether the parties intended to create a mortgage at the time of the transaction. *Port Auth. v. Harstad*, 531 N.W.2d 496, 499 (Minn.App.1995); *Miller*, 394 N.W.2d at 283; *Ramier*, 311 N.W.2d at 503; *Ministers Life*, 239 N.W.2d at 210; *Proulx v. Hirsch Bros., Inc.*, 279 Minn. at 165, 155 N.W.2d 907 (1968).

■■■] But, intent by itself is insufficient to create an equitable mortgage in the absence of some form of written instrument of conveyance. The doctrine of equitable mortgage is completely inapplicable when there is no written document:

> The inflexible rule 'once a mortgage always a mortgage' ... and the related doctrine that a deed absolute in form may be shown to be a mortgage, where such was in fact the intention of the parties ... are quite independent of statute [of frauds].

They permit an adjudication contrary to what the written forms, without adjudication, would require. They have no application to the question whether an agreement on the one hand to execute and on the other to accept a real estate mortgage in the future is to be enforced by specific performance or by an action for damages. Such cases [citations omitted] declaring a deed absolute in form to be in fact a mortgage are irrelevant for ... purposes [of determining the application of the statute of frauds].

*Hatlestad*, 197 Minn. at 640, 268 N.W. 665. Because the alleged mortgage in this case is based entirely on an oral agreement between the parties, the doctrine of equitable mortgage does not apply and the Plaintiffs are not entitled to an equitable mortgage against the Defendant's homestead.[7]

In light of the foregoing analysis, I conclude that it is unnecessary to address the Defendant's remaining arguments and that the Defendant is entitled to judgment as a matter of law. Accordingly, IT IS HEREBY ORDERED that the Defendant's motion for summary judgment is GRANTED in all respects. Judgment will be entered in favor of Defendant and against Plaintiffs with each party to bear its or their own respective costs and attorneys fees.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

oral mortgage contract. Such payment just as easily evidences the existence of an unsecured loan agreement between the parties as it does an agreement to give security. It has long been the law, therefore, that "the mere payment of some money without more ... [is] not such part performance as to warrant specific performance." *Hecht v. Anthony*, 204 Minn. 432, 437, 283 N.W. 753 (1939); *Butler Bros. v. Levin*, 166 Minn. at 162, 207 N.W. 315.

**7.** To be distinguished is the assertion of a vendor's lien, such as that dealt with in *Hecht v. Anthony*, 204 Minn. 432, 283 N.W. 753 (1939) (vendors lien enforced; defendants, vendees, were not owners of the property as their homestead when the oral agreement to grant a mortgage to the vendor was given.)