BRUDNO *v.* KOHN ET AL.

BRUDNO *v.* SHANE.

**134**

(Decided July 12, 1929.)

*Mr. Ezra Brudno* and *Messrs. Howell, Roberts & Duncan,* for plaintiff in error.

*Messrs. Beckerman & Felsman,* for defendants in error.

WILLIAMS, J. These two cases may properly be considered together. In the case of Brudno v. Kohn a judgment was rendered in the court of common pleas in favor of Kohn, in the sum of $3,217.50, the recovery of a commission on an exchange of pieces of real estate. In the case of Brudno v. Shane there was a judgment in favor of Shane for damages in the sum of $4,750, for breach of contract growing out of the same exchange of property. These proceedings in error are brought for the reversal of these judgments.

There is only one question involved which we will discuss, and that is whether or not there was a valid contract in writing within the meaning of the statute of frauds, which requires a contract for the sale or exchange of real estate to be in writing and signed by the party to be charged. Section 8621, General Code.

The contract involved the exchange of pieces of real estate in Cleveland and East Cleveland, and purports to have been executed July 26, 1927.

In the commission case, the commission was to be due upon the completion of the negotiations for the exchange of the properties, and, if no valid contract

was entered into, no commission was earned. It is also fundamental that, if there was no valid contract for the exchange of properties, there can be no recovery of damages for the breach thereof.

It appears from the record in each case that Brudno repudiated his contract for the exchange of properties. It is undisputed in both cases that Brudno received a copy of the contract for the exchange of the properties, but that it did not suit him, and he prepared a new contract in duplicate, making one or two changes. He signed one copy, and took both copies with him to a meeting at which Shane and others were present. The contract which Brudno had prepared contained the following provision:

"It is understood that the land of the second party (Charles Shane) is not restricted against the building of apartments nor has it any restrictions against building to the lot line."

After some talk Shane signed both copies, and returned the one signed by him alone to Brudno, retaining the one signed by Brudno and himself. Brudno took the copy given him back to his office, and claims to have discovered subsequently that in the clause above quoted the words "has it any" had been stricken out, and the words "are there deed" inserted in their place. All of the other persons present at the meeting testify that the change was made in both copies, with the knowledge and express consent of Brudno, before Shane signed. There is no dispute that the change was made before the copies were given to the respective parties, and there is no dispute that the contract taken by Brudno when he left had the changes in it.

It is contended by plaintiff in error, Brudno, that, even though the change was made with his knowledge and consent, he is not bound under the statute of frauds. The rule supported by reason and authority is that, where parties are negotiating for the sale of a piece of real estate, and a written contract has been prepared and signed by one of them, which, upon submission to the other, does not meet his approval, and the other suggests changes which are made therein in writing with the knowledge and consent of the one who has previously signed it, and thereafter the contract so changed is signed by the remaining party, and each takes and retains a copy of the contract so changed and signed by the other, there is such adoption of his signature by the first signer as makes a binding and valid written contract, under the statute of frauds.

Oral evidence was not received in the instant cases to show the terms of the contract, for all such terms were in writing; but oral evidence was received and was competent to show the condition of the contract at the time it was finally executed and the minds of the parties met thereon. The oral proof went not to the terms of the contract, but to the execution thereof. S. Martin Leake in his Law of Contracts (7th Ed.), at page 611, after discussing the effect of filling in blanks in a deed after execution, uses the following language:

"Upon the same principle with contracts within the statute of frauds, a memorandum or proposal of terms signed by one of the parties may be altered on either side in the course of negotiation until a final agreement, which will operate as a sufficient acknowl-

edgment of the original signature; and parol evidence is admissible to show the state of the document at the time of the final agreement.''

The author then cites the following cases: *Hudson* v. *Revett,* 5 Bingham, 368; *Adsetts* v. *Hives,* 33 Beav., 52; *Stewart* v. *Eddowes,* L. R., 9 C. P., 311; 43 L. J., C. P., 204.

In *Stewart* v. *Eddowes, supra,* a written memorandum for the sale of a ship, required to be in writing by the statute of frauds, was signed by the purchaser, and later changed by the seller, and then signed and submitted to the purchaser, who assented to the terms of it as it then stood. It was held that the action on the contract in the form in which it was signed by the seller could be maintained against the purchaser, notwithstanding the provision of the statute of frauds, and that parol evidence was admissible to show that the purchaser had assented thereto. Lord Coleridge, Chief Justice, in the opinion says:

''It is now suggested that evidence is not admissible to shew that Stewart [the purchaser] acquiesced in the striking out of the interlineations in red ink of the insertion of the others, on the ground that that would be to vary the contract by parol. This contention appears to me to be a fallacy. There was no variation of the contract because there was no contract between the parties until the proposal was submitted to Stewart, and Stewart on meeting Eddowes [the seller] agreed that his handwriting should operate as a signature to what then became a complete agreement between the parties. There was no evidence to vary the terms after the

agreement became an agreement, but only evidence to shew what the agreement was to which the parties agreed when they signed or acknowledged their signatures.''

In *Bluck* v. *Gompertz,* 7 Exchequer, 862, Pollock, C. B., at page 868, uses the following language:

''It may, however, be inferred, from the fact of the defendant himself writing the memorandum across for the plaintiff to sign, not only that he agreed that the bill for 150 L., previously substituted instead of one for 146 L. by the plaintiff, should stand in the place of that for 146 L., and impliedly, that the defendant should be responsible for it; but also that he admitted that the original contract was, that he should procure to be accepted and see paid any bill for the amount of the invoice of the second parcel of wine, and that the invoice was 150 L. so that there would be proof of the contract alleged in the declaration in writing. If so, it may be inferred, from the fact of the second memorandum being written on the same paper by the defendant, that it was meant to be authenticated by the old signature, so as to constitute a memorandum of the defendant's agreement in writing signed by the defendant. If so, the statute of frauds has been complied with; and although we have not come to this conclusion without some difficulty and doubt still remaining in the mind of my Brother Parke, we think this is the true view of the case.''

In *Winslow* v. *Jones,* 88 Ala., 496, 7 So., 262, the court says:

''The mortgage, which was of personal chattels, was executed February 11, 1888, and included, at

that time, two horses. Some months after, by request and consent of the mortgagors, both being present, one of the horses originally included in the mortgage was released therefrom, and in lieu thereof the horse now sued for was, by interlineation, substituted. The sole question presented is, whether, under Section 1731 of the Code, which declares, 'A mortgage of personal property is not valid, unless in writing and subscribed by the mortgagor,' the mortgage is valid, and passed the title to the horse in controversy.

"The general rule, that parties may alter or modify, at pleasure, their contract after its consummation, applies to deeds, and mortgages. An insertion of other personal property in a mortgage, is but a modification or alteration of the contract, which is not prohibited by any rule of law, and which the parties are competent to make. In reference to alterations and interlineations in a conveyance of real estate, made in the handwriting of the grantor, Brickell, C. J., says, in *Sharpe* v. *Orme,* 61 Ala. 263: 'If it had been shown they were made after the delivery of the deed, the conclusion would be, that they were made by consent, and the validity of the deed would be unaffected by them, if it were not that an attestation by witnesses, or an acknowledgment of execution before a proper officer, is essential to the valid execution of a conveyance, passing the legal estate in lands.' Neither attestation by witnesses, nor acknowledgment before an officer, is essential to the valid execution of a mortgage of personal property; hence the insertion of other personal property, by consent of all the parties, does not affect its va-

lidity. A re-subscription would be a mere formal and useless ceremony. In note 1 to Section 586 of 1 Greenl. on Evidence, the annotator remarks, 'When, therefore, a deed is materially altered, by consent of the parties, after its formal execution, the grantor or obligor assents that the grantee or obligee shall retain it in its altered and completed form, as an instrument of title; and this assent amounts to a delivery, or re-delivery, as the case may require, and warrants the jury in finding accordingly.' When the mortgage to plaintiff was interlined in the manner shown, and again delivered to the mortgagee, with intent that he should retain it as thus altered, it became operative as an instrument of conveyance, having the same effect, as between the parties, as if a new mortgage had been made.—*Bassett* v. *Bassett*, 65[55] Me. 127.''

In *Bassett* v. *Bassett*, 55 Me., 127, the court says:

''There is no rule of law prohibiting the alteration of a deed by the parties to it. An alteration by one party without the consent of the other will avoid it. But if an alteration is made by consent of all the parties to it, and the grantor assents that the grantee shall retain it in its altered form, such assent, says Mr. Greenleaf, amounts to a redelivery, and warrants the jury in finding accordingly. A deed takes effect when it is delivered, and there is no rule of law prescribing to the grantor the order in which the several acts necessary to complete it shall be performed. He may sign and seal a blank and fill it up afterwards, or he may fill the blank first, and then sign and seal it; and, if a deed, once completed and delivered, is surrendered for the purpose, he may as

well alter it over for the purpose of making a new deed, as to use a new blank; and if, when a new deed is thus made by altering an old one, it is again delivered with intent that it shall take effect and become operative as an instrument of conveyance, the law will give it such effect. 1 Greenl. Ev., (11th Ed.) Section 568, a., and notes, and authorities there cited.''

In *Pontrich* v. *Neimann,* 208 Ky., 715, at page 718, 271 S. W., 1049, 1050, the court uses the following language:

''In other words, the parties acknowledged their signatures to the writing as presented to the witnesses, and thus adopted their old signatures on the writing, instead of writing their signatures anew. The question is: Did their conduct—this act—satisfy the requirements of the statute of frauds? We think it did. It is a general rule that a party may adopt any mark, character, or name as his signature to an instrument, and, if he does so, he is bound as effectually as if he had written his full name thereto. The signature to a writing is placed there for the purpose of authenticating it, and for the purpose and with the intent of the signor becoming and being bound thereby. Such a signature, one purposely made by the party on a previous occasion, may be adopted for a new writing then made, with the same effect as if made anew. This is a sufficient compliance with the requirements of the statute of frauds.''

In *Vidvard* v. *Cushman,* 35 Hun, 18, the court, at page 20, says:

''The original lease, and the lease as modified, be-

ing for terms longer than a year, were required by the statute of frauds to be in writing and signed by the lessors. The original lease was in writing and so was the modified lease. It is urged that the new lease is not binding, because it was not re-signed by the lessors and re-delivered. The added stipulation was written in the lease by one of the lessors in the presence, and with the assent of the lessee. The signatures of the contracting parties were then upon the lease. This was a good execution of the new or modified lease. (*Bluck* v. *Gompertz,* 7 Exchq., 862; *Woolley* v. *Constant,* 4 Johns., 54 [4 Am. Dec., 246]; *Knapp* v. *Maltby,* 13 Wend., 587; *French* v. *Patton,* 9 East., 350; Leake's Law of Contracts, 814, 815). The transaction between the parties, as found by the court, amounts to a re-execution and re-delivery of the lease in its modified form, and it became as binding in that form as though it had been re-drafted and re-signed. Re-writing or re-signing, or both, would have added nothing to its validity. As was well said by Justice Vann at Special Term, 'The signatures were there and it was intended they should remain there when the alteration was made. The parties regarded and treated them as their signatures to the instrument as changed. Under such circumstances, was it necessary to re-trace or re-write their names? To re-trace with a dry pen would seem absurd, while to re-trace with a wet one would obscure the identity of the signature. Would either of these idle ceremonies adopt the signatures already appended more effectually than simply writing in the words, making the change, in the presence of all the parties and with their consent.' "

Were the rule as contended for by plaintiff in error, parties negotiating with reference to the sale of land might sign up a written contract, and then, after the signatures of all the parties thereto were attached, discover that some material change should be made in the contract as written in order to carry out the real intention of the parties, and make changes accordingly by interlineation, with the knowledge and consent of, and in the presence of, all the parties, and yet the change would be invalid and the contract would have to be enforced, if at all, as originally signed. Such a rule would lead to a ridiculous end, and make the statute of frauds a hardship instead of a protection. On principle there is no difference between an alteration in the instrument made by the party who has previously signed it and one made by another in his presence with his knowledge and consent. In the latter case the hand that holds the pen is the mere instrumentality used by the party for whom the change is made. Who will deny that a valid contract may be made by signing before the writing is placed above the signature at the direction of the signer. If, after the contract is so signed and filled up, the writing is accepted by the other party thereto, either by delivery, as in the case of a deed, or by legally assenting thereto, as in the case of a contract for the sale of land, a contract so previously signed is signed by the party to be charged, within the meaning of the statute of frauds.

There seems to be only one logical interpretation, and we think the trial court in each of the cases below adopted the proper rule. In fact, we have not found a single authority which supports the conten-

tion of plaintiff in error. At first blush, the case of *Hawkins* v. *Holmes*, 1 Peere Williams, 770, seems to be an authority in point, but on examination it develops that the purchaser of the piece of real estate never received a conveyance thereof, or signified his acceptance thereof, and never signed any paper writing. It is therefore of no help in the present inquiry.

We have examined all the assignments of error relied upon by plaintiff in error in his briefs in the respective cases, and we are unable to find that any prejudicial error was committed by the trial court in either case. For the reasons given, the judgments will be affirmed.

*Judgments affirmed.*

RICHARDS, J., concurs.

LLOYD, J., dissenting. The original purpose of the Statute of Frauds, so-called, was to prevent disputes as to contracts required by the statute to be in writing, but the desire to accomplish in particular cases, what was conceived to be just, has led to the creation by judicial interpretation of so many distinctions and exceptions, that the resulting confusion and uncertainty have been as great, and the consequent litigation, as voluminous, as if the statute had never been enacted.

Commenting upon this tendency, Coleridge, L. J., in the case of *Reeve* v. *Jennings*, 2 K. B., 522, 79 L. J., K. B., 1137, stated that "the statute of frauds has been much buffetted about by decisions, but its life is not quite extinct."

It is inconceivable that any case could be presented to any court involving more acrimonious and bitter

dispute, charges and counter charges, than is presented in the record in the instant cases, the possibility and opportunity for which, it would seem, the statute was intended to prevent.

There is no denial of the fact that the contract in question was materially altered by some one other than Brudno, the party to be charged, after it had been signed by him. No witness testified that Brudno suggested to any one, or requested or directed any one, to make the alterations; the utmost that is claimed by defendants in error being that it was made by one of their attorneys, Mr. Felsman, of Beckerman & Felsman, in the private office of Mr. Beckerman, in the presence of themselves and of Beckerman and Brudno, and that before and after it was made Brudno, in effect, said: "That will be satisfactory." All of these gentlemen were witnesses, and all of them are interested directly or indirectly in the result of this controversy.

The evidence shows that the property which Shane was to convey to Brudno was 127 feet in depth, and, according to Brudno, in order that he might be assured that there were no restrictions, zoning or otherwise, as to the building of apartments thereon, he redrew the contract, inserting therein the condition that "it is understood that the land of the second party is not restricted against the building of apartments, nor has it any restrictions against building to the lot line," the alteration consisting in striking out the words "has it any" and interlining the words "are there deed." Brudno denied any knowledge of the alteration so made, claiming that duplicate copies of the contract as prepared by

him, one of which he had signed, were taken into an adjoining office, and that, when returned to the office where he was waiting, he was given one copy thereof; that he thereupon left the office of Beckerman & F'elsman, and did not observe the alteration made therein until the next morning, when he discovered that he had been given the copy of the contract signed by Shane, but not by himself; that he at once investigated the matter, and, finding that there was in fact a zoning ordinance requiring buildings erected on the lot in question to be set back 19 or 20 feet from the lot line, immediately called attention and objected to the alteration so made. If Brudno had himself made the alteration, or had in any way indicated on the instrument itself his approval thereof, the situation would be quite different.

"It is a well-settled rule, that the name of a person to be charged must appear at least somewhere upon the instrument, and it must be placed there for the purpose also of giving it authenticity."

*Anderson* v. *Harold,* 10 Ohio, 400; *Kling, Admr.,* v. *Bordner,* 65 Ohio St., 86, 99.

How can it be said that the signing of a proposed contract, in which new terms and conditions are thereafter substituted by interlineation and existing ones eliminated by erasure, constitutes either a signing or an authentication of the changed instrument within the meaning of the statute? Is not the writing as changed a counter offer, which, to be enforceable as a contract, must be signed by the party to be charged?

Is it anything more than mere pleasantry to suggest that the retracing of his signature by the party

to be charged subsequent to the alteration of a contract signed by him, or a notation thereon "O. K.," or "Approved, Brudno," or the placing thereon of some other mark of affirmative approval, is not more certain than a conclusion of fact adduced by weighing the conversations pro and con of interested persons? Memory of conversations is fleeting at the best, and inclined generally to recall, if not intentionally, subconsciously, what self-interest dictates. Does compliance with a statutory rule "lead to a ridiculous end and make the statute of frauds a hardship instead of a protection?" If this were true, the fault is with the Legislature, but to so say is a false conclusion, for who is to be the judge as to which of the parties is most in need of protection? Was it not because of this uncertainty that the Legislature established a fixed rule of procedure as to contracts of the character here in question? Is not the Legislature, speaking through the statute, the judge?

What the real facts are no one will ever know except the parties themselves, and, however much opinions may differ, the fact remains that there was no re-signing by Brudno of the proposed contract, although the alteration was made by an attorney who might have avoided all possibility of dispute by requesting Brudno, who, it is claimed, consented thereto, to indorse upon the contract his approval thereof. The question here in controversy does not relate to a dispute as to whether the contract was changed after its execution, the party to be charged claiming that it had been, and the other that it had not; nor to a dispute as to whether an agent who had

signed a contract for his principal had been "thereunto by him lawfully authorized;" nor is it a contract signed by a principal with authorization to an agent to complete it, the statute not requiring the agency to be evidenced in writing. Questions such as these must necessarily be submitted to a jury for determination, but to say that the issues involved in the instant cases are for a jury to decide is in my judgment an erroneous conclusion.

I take it that the Legislature intended the statute to mean what it purports to say, and to be mandatory in its command that "no action shall be brought whereby to charge the defendant" upon contracts of the character therein enumerated, unless compliance has been made therewith. The statute does not create a limitation upon what constitutes a contract, but requires a specified formality of proof to enforce it. It does not provide expressly or impliedly that ignorance of its operative effect will excuse its violation. The party to be charged may, at his option, perform, or refuse to perform, a contract not enforceable, because within the purview of the statute, but to permit a jury to determine from disputed testimony that a person has signed a contract that admittedly he has not adds but another amendment to the statute by judicial act. Generally, a reviewing court assumes the facts to be what a jury has said they are, unless the error complained of involves the weight of evidence, and on this assumption proceeds to consider the question presented as one of law. If the judgment of a jury were infallible, there would be no need for a statute of frauds.

If the law is as announced in the majority opinion, how easy it would be to inveigle the party to be

charged into the presence of three or four or more adversely interested persons and there alter, to the entire satisfaction of a jury, not only one condition of a signed contract, but, if the spaces therein were sufficient, make any number of interlined alterations, including even the description of the real estate and the consideration, against which the party to be charged might, like a "voice crying in the wilderness," truthfully, yet vainly, protest to the most discerning jury. The purpose of the statute is to make certain the facts, and not to permit a jury or the party seeking to enforce the contract to juggle with conflicting testimony in search of a conclusion to serve as a substitute for the certainty which the statute requires. Nor is the contract here in question analogous to a deed, which, if properly executed and acknowledged, consummates negotiations and vests title upon delivery. In a contract for the sale of lands, the owner may impose such restrictions and conditions as he sees fit with respect to the proposed conveyance of his property. Section 8621, General Code, applies to contracts of sale, but has no application to deeds. Accordingly it seems to me that authorities in which the facts in issue relate to deeds cannot assist in arriving at a correct conclusion in the instant cases.

My experience has been that, if one searches with sufficient avidity and patience, he can find an authority or a near-authority on almost any question in litigation, but, even on the assumption that authorities must always be forthcoming before a conclusion may be reached, I am not satisfied that the particular question here involved has been judicially determined. My conviction is that the court should

seek not to destroy by strained interpretation or construction the effect and plain import of the statute, but rather to uphold it, leaving to the discretion of the Legislature its amendment or repeal. If, however, in the course of time, its life is to become "quite extinct," it would seem that the Legislature should be permitted to conduct the obsequies.

The judgments of the trial court should be reversed and final judgments rendered for plaintiff in error.

Judges WILLIAMS, LLOYD and RICHARDS, of the Sixth Appellate District, sitting by designation in the Eighth Appellate District.