766 P.2d 1267

**GEORGE W. WATKINS FAMILY, an Idaho general partnership, and Hope C. Watkins, individually and as Personal Representative of the Estate of George W. Watkins, Sr., Plaintiffs–Respondents,**

v.

**Harry MESSENGER, Defendant–Appellant,**

and

Farmer's Exchange, Inc., a forfeited Idaho corporation, Blake Boyce, John Does I, II, and III and all other unknown persons who may claim an interest under the above-named persons in that certain real property described herein and located in the West Broadway Addition to the City of Idaho Falls, Bonneville County, Idaho, Defendants.

No. 17028.

Court of Appeals of Idaho.

Dec. 27, 1988.

387

Margaret B. Hinman and E.W. Pike of Anderson, Pike & Bush, Idaho Falls, for defendant-appellant.

Earl Blower of Petersen, Moss, Olsen, Meacham & Carr, Idaho Falls, for plaintiffs-respondents.

SWANSTROM, Judge.

This dispute concerns the validity of a written lease agreement and the lessee's liability to the lessor when an assignee of the lease defaults in the payment of rent. Harry Messenger, the lessee, appeals from a district court judgment in favor of the George W. Watkins family, a partnership, and Hope C. Watkins (the lessors). Farmer's Exchange, Inc., was the assignee of the lease.[1]

The issues are whether Hope Watkins' initialling of changes in the written lease agreement satisfied the signature requirement of the statute of frauds; whether there was consideration given by the lessors for Messenger's signing of the lease agreement as lessee; whether the lessors' consent to the assignment of the lease relieved the lessee from liability; whether the lessee's obligations under the lease agreement were discharged when the assignee leased additional space from the lessors with a concomitant increase in rent; and whether the district court abused its discretion in awarding attorney fees and all non-

---

1. Farmer's Exchange, Inc., was an Idaho corporation which forfeited its charter in November 1982, prior to the filing of the lessors' complaint. Blake Boyce, the corporation's statutory trustee, did not file an answer or otherwise defend the action or appear in the proceedings below. The record discloses that no judgment was entered against the forfeited corporation or Blake Boyce.

discretionary costs to the lessors. We affirm the judgment. We modify the amount allowed for non-discretionary costs and, as modified, we affirm the order awarding costs and attorney fees.

The record presents the following pertinent facts. During May and June of 1982, Farmer's Exchange negotiated with the lessors to lease a commercial property site. The lessors informed Farmer's Exchange that it would not be accepted as lessee because of its poor financial condition. The lessors explained that a financially stable person would be accepted as lessee and then Farmer's Exchange could obtain an assignment of the lease.

Farmer's Exchange located a purportedly willing lessee, James Tatum. The lessors were satisfied with Tatum's financial position, though the lessors had not communicated with him. An agreement was drafted for a five-year lease to commence on July 1, 1982. On July 6 a purported agent of Tatum, M.J. Humphries, signed the lease agreement, including a clause hand-printed by the lessors which assigned the lease to Farmer's Exchange. Dane Watkins, a general partner, and Hope Watkins signed the agreement on behalf of the lessors. On July 9 Farmer's Exchange paid $2,000 to the lessors for rent. The record is not clear, but it appears that Farmer's Exchange went into possession.

Sometime later in July, Tatum declared to the lessors that he was not interested in any lease and that Humphries had no authority to sign the agreement for Tatum. The lessors then informed Farmer's Exchange that the lease agreement would not be honored because Tatum was not willing to be the lessee. Between this time and August 2, Farmer's Exchange attempted to find a new lessee. Farmer's Exchange persuaded Messenger to sign the agreement as lessee. Messenger had been involved in other prior transactions with Farmer's Exchange. Messenger was acceptable to the lessors.

On August 2, Dane Watkins and George Watkins, Jr., general partners, met with Messenger and the principal officers of Farmer's Exchange to execute a lease agreement. The original lease agreement signed by Humphries for Tatum was used. Through interlineations, Tatum's name as lessee and Humphries' signature were deleted. Dane Watkins' signature was likewise deleted but Hope Watkins' signature remained intact. Other changes to the written lease agreement were also made by interlineation. George Watkins, Jr., signed the agreement, already signed by Hope Watkins, for the lessors. Messenger signed as lessee and, as Humphries had done, signed the clause assigning the lease to Farmer's Exchange. All the changes were initialled by Messenger and by the Watkins family members who were present. Hope Watkins later initialled the changes.

In September the assignee, Farmers Exchange, negotiated directly with the lessors to lease additional space, a paint room on the property site. A separate lease agreement was executed covering the paint room for a stated additional rent. Messenger was not advised of this increase in space and rent.

The assignee paid only a portion of the entire rent for October and failed to pay any rent thereafter. The lessors sent notices of default on the property and paint room leases to the lessee and the assignee. The defaults were not cured and this action followed. After a two-day trial, judgment was entered in favor of the lessors for rent accrued on the property lease, but excluding any unpaid rent on the paint room. This appeal followed.

Findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Consequently, our standard for reviewing a trial court's findings and conclusions is to determine whether they are supported by substantial evidence, and to determine whether the trial court properly applied the law to the facts as found. *See Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct. App.1983). When presented with questions of law we exercise free review.

I

■ Pursuant to I.C. § 9–503 (the statute of frauds), any lease for a term exceed-

ing one year must be in writing and "subscribed by the party creating, granting, assigning, surrendering or declaring the same...." The lessee in this case contends that the word "subscribed" mandates a full signature. The lessee argues that the written lease agreement fails to satisfy the statute of frauds because Hope Watkins did not re-sign the agreement on August 2, but only initialled the changes.

Generally, the signature required by the statute of frauds may be any symbol made or adopted by a party, with an actual or apparent intent to authenticate the writing and give it force and effect. See *Marks v. Walter G. McCarty Corp.*, 33 Cal.2d 814, 205 P.2d 1025 (1949); *The Rader Co. v. Stone*, 178 Cal.App.3d 10, 223 Cal.Rptr. 806 (1986); *Hillstrom v. Gosnay*, 188 Mont. 388, 614 P.2d 466 (1980); *Hansen v. Hill*, 215 Neb. 573, 340 N.W.2d 8 (1983); *Brudno v. Kohn*, 34 Ohio App. 133, 170 N.E. 581 (Ct.App.1929). The traditional form of signature is, of course, the handwritten name of the signer. But initials or any symbol may also be used; and the signature may be written in pencil, typed, printed, made with a rubber stamp or impressed into the paper. RESTATEMENT (SECOND) OF CONTRACTS § 134 comment a (1981); *see Kamada v. RX Group, Ltd.*, 639 S.W.2d 146 (Mo.Ct.App.1982). We hold that the statute of frauds has been satisfied here.

## II

The lessee also contends there was no return promise or performance from the lessors to him in exchange for his signing the agreement as lessee because the assignee was already in possession of the property. Therefore, the lessee declares he received nothing for the mere formality of signing the agreement, rendering it unenforceable due to the lack of sufficient consideration. The lessors submit that the assignee was not a tenant in possession because the original lease agreement was void. Neither argument is sound.

A tenancy at will may be created when a tenant goes into possession with the owner's consent, even under a void

lease. *Quayle v. Stone*, 43 Idaho 306, 251 P. 630 (1926). However, this landlord and tenant relationship does not prevent the owner from entering into a lease agreement, providing the legal right of possession to a third party. The new tenant may then require the landlord to provide actual possession and may resort to other remedies. See RESTATEMENT (SECOND) OF PROPERTY, Landlord & Tenant §§ 6.1 and 6.2 (1977); *see generally* 49 AM. JUR.2D *Landlord and Tenant* §§ 216 and 217 (1970).

Consequently, the possession of the property by the assignee posed no barrier to an exchange of promises or performances between the lessors and the lessee under the terms of the lease agreement. The execution of the agreement here was not a mere formality because it provided the lessee and, in turn, the assignee with a five-year leasehold interest—a more valuable property right than a tenancy at will. In addition, the five-year leasehold interest contained covenants with burdens and benefits apart from the tenancy at will.

Encouraged by principal officers of the assignee, the lessee agreed to help the assignee obtain the lease. It matters not whether the lessee signed the lease with the intent to obtain possession or with the intent to act only as a surety. His willingness to enter into privity of contract with the lessors connotes a readiness to accept the concomitant liability. Neither does it matter that the consideration, in the form of the five-year lease, passed from the lessors ultimately to the assignee. The evidence bears out that the consideration was bargained for and given in exchange for Messenger's promise as lessee. This is sufficient consideration. See RESTATEMENT (SECOND) OF CONTRACTS § 71 (1981); *see also Bank of Idaho v. Colley*, 103 Idaho 320, 647 P.2d 776 (Ct.App.1982) (rejecting attack upon gratuitous guaranty).

The lessee asks us to follow a decision by the Wyoming Supreme Court in *Moorcroft State Bank v. Morel*, 701 P.2d 1159 (Wyo. 1985). In *Moorcroft* a rancher's employee

obtained a personal loan from a bank. A few days later, the bank asked the rancher to guarantee the loan. Succumbing to the bank's urging, the rancher signed as guarantor. When the employee defaulted, the bank sought to enforce the guarantee. The rancher claimed a lack of consideration. The bank argued that the rancher's interest in having a good employee was sufficient consideration. The Wyoming Supreme Court held: "When the guarantor is not a part of the original transaction of the principal obligor, his promise must be supported by separate consideration." *Id.* at 1161. The court had no difficulty in finding a lack of consideration for the rancher's guarantee.

*Moorcroft* is not helpful to the lessee in the present case. It does not overturn the doctrine of gratuitous guaranty. Rather, it recognizes a narrow exception where the guaranty is given in a separate transaction after the creation of the original obligation. That exception does not apply here. The lessee in this case was directly involved in the transaction creating the five-year lease. On August 2, Messenger executed the lease agreement, assuming the obligations of a lessee. On the same date he assigned the lease to Farmer's Exchange. Then, and only then, did the assignee receive the five-year leasehold interest. Consequently, sufficient consideration passed upon the execution·of the agreement; no separate consideration was required. We hold that sufficient consideration passed from the lessors for Messenger's promise as lessee.

### III

■ The lessee next asserts that the lessors' consent to an assignment of the lease relieved him of liability. He finds ambiguity in the following provision of the lease agreement:

It is agreed that Lessee shall have the right to assign this lease and sublet the premises, without requiring the advance written consent of the Lessor; PROVIDED, HOWEVER, the Lessee shall nevertheless not be relieved from his obligation to fully perform hereunder in the event of the default of the assignee. [Underlining original.]

The lessee contends the word "nevertheless" makes the provision ambiguous. His interpretation is that if the lessors give consent to an assignment, in effect a novation occurs relieving the lessee of any obligations.

■ We are unable to discover the asserted ambiguity. In our view the quoted language clearly holds the lessee primarily obligated in the event of an assignment and subsequent default by the assignee. Absent an express novation, a lessee remains in privity of contract with the lessors and is a guarantor for performance ·of the covenants in the agreement. *Kendall v. Ernest Pestana, Inc.*, 40 Cal.3d 488, 220 Cal. Rptr. 818, 709 P.2d 837 (1985); RESTATEMENT (SECOND) OF PROPERTY, Landlord & Tenant § 16.1 (1977). There is no express novation here. We hold that the lessors' consent to an assignment did not relieve the lessee of his obligation under the lease agreement.

### IV

■ The lessee complains that the lessors wrongfully attempted to impose increased liability on him when the assignee leased the paint room directly from the lessors. This, he postulates, adversely affected him, necessitating that he be discharged from all of his obligations under the lease agreement. We disagree. The lessee cannot show any *actual* adverse effect running from the lease of the paint room. The judgment rendered below did not include any amounts for default on the paint room lease. The lessee's argument on this point is without merit.

### V

The final issue is whether the district court abused its discretion in awarding attorney fees and all non-discretionary costs to the lessors. Following the entry of judgment, the lessors timely filed a memorandum of costs and attorney fees. The lessee objected to the memorandum, challenging certain costs claimed as a matter of right and asserting that the claim of attor-

ney fees was unsupported by any indication of time and labor involved. The district court permitted the lessors to file a supplemental memorandum substantiating the attorney fees claimed. The court then awarded attorney fees and all non-discretionary costs to the lessors.

The lessee contends the district court erred in allowing the lessors to file the supplemental memorandum instead of denying outright the claimed attorney fees. The lessee further contends the court erred in allowing costs for exhibits not admitted into evidence and for exhibits used to "harass" witnesses at trial. *See* I.R.C.P. 54(d)(1)(C).

█ The trial court in its discretion may allow a party to file a supplemental memorandum correcting defects in the original memorandum of attorney fees. *Camp v. Jiminez,* 107 Idaho 878, 693 P.2d 1080 (1984) (citing *Ada County Highway District v. Acarrequi,* 105 Idaho 873, 673 P.2d 1067 (1983)). We find no abuse of the district court's discretion in allowing the lessors to supplement their memorandum of attorney fees.

█ In awarding non-discretionary costs the trial court must follow the guidelines in I.R.C.P. 54(d)(1)(C). Under Rule 54(d)(1)(C), a party is entitled to reasonable costs of exhibits admitted in evidence. In the memorandum of costs the lessors claimed $139.95 for the preparation of blueprints used as exhibits at trial. The exhibits were not admitted as evidence. Therefore, the lessors are not entitled, as a matter of right, to these costs. *See* I.R.C.P. 54(d)(1)(C)(6). The district court erred in allowing this amount as a non-discretionary cost. Accordingly, we reduce the award of non-discretionary costs from $1,424.47 to $1,284.52. The blueprint cost may still be allowable as a discretionary cost. I.R.C.P. 54(d)(1)(D). We remand the case for the district judge to make this limited determination. We recognize that the judge did not allow any of the other discretionary costs claimed by lessors but we will not presume to say that he would likewise deny the blueprint costs. Of course, because no cross-appeal was taken from the decision

denying the other discretionary costs, that decision is final.

The lessors also claimed costs for certified copies of deeds and mortgages executed by the lessee which were admitted into evidence. The lessee claims these costs should be disallowed under Rule 54(d)(1)(C) because the exhibits were used only to "harass" him. There is nothing in the trial transcript to support the lessee's assertion of harassment. We will not disturb the award of these costs.

The judgment for the lessors is affirmed. The order awarding attorney fees and costs is vacated. The case is remanded for reconsideration of one item of discretionary costs—the blueprint exhibits. Pursuant to the terms of the lease agreement and I.R.C.P. 54(e)(1), the lessors are entitled to attorney fees for this appeal. Accordingly, we award attorney fees and costs to respondents, the amount to be determined under I.A.R. 41(d).

WALTERS, C.J., and BURNETT, J., concur.