**In re SUNSHINE PRECIOUS METALS, INC., Debtor.**

**Bankruptcy No. 92–00749–11.**

United States Bankruptcy Court, D. Idaho.

March 18, 1993.

---

Jed W. Manwaring, Evans, Keane, Koontz & Gibler, Boise, ID, for debtor.

. D. Blair Clark, Ringert Clark Chartered, Boise, ID, for creditor Mary Mining, Inc.

## MEMORANDUM OF DECISION

### ALFRED C. HAGAN, Chief Judge.

On January 6, 1993, this Court issued an opinion holding that Sunshine Precious Metals, Inc., the debtor in this Chapter 11 ("SPMI"), did not have an interest to assume or reject in a lease of mining property from Mary Mining Co., Inc. ("Mary Mining"). This matter is again before the Court on Mary Mining's motion to set aside the January 6 order, and to allow Mary Mining's supplemental claim for royalty payments due under the lease.

SPMI argues the entire motion is merely an attempt to reargue the issue of assumption or rejection of the lease under 11 U.S.C. § 365. Mary Mining is attempting to reargue that issue since the motion's caption states that it is brought under the provisions of Federal Rules of Bankruptcy Procedure 9023 and 9024. Mary Mining further asserts the motion contains new matter, that is, a motion to establish Mary Mining's claim. Accordingly, this discussion will involve the issue of a rehearing on the previous decision that SPMI has no interest in the lease agreement to assume or reject under Section 365, and the Mary Mining claim for past due royalties.

## FACTS

This transaction arises out of a complex series of leases. On November 15, 1986, a mining lease was entered into between NCNB National Bank of Florida as lessor ("NCNB"), and Sunshine Mining Co. as lessee. (Hereinafter, this lease shall be referred to as the "NCNB–SPMI lease.") This lease, of certain properties in Nevada, was for a period of 20 years and required, among other things, that Sunshine Mining Co. pay royalties on ore removed from the property. The lease additionally permitted assignment of the lease without consent.

On August 1, 1988, Sunshine Mining Co. changed its name to Sunshine Precious Metals, Inc. Effective July 1, 1989, SPMI entered into a lease with Zephyr Resources, Inc. ("Zephyr"). (Hereinafter, this lease shall be referred to as the "SPMI–Zephyr sublease.") This lease included not only the properties subject to the NCNB–SPMI lease, but also other properties owned by the debtor. While the SPMI–Zephyr sublease provided that Zephyr would meet all of the obligations of the leases it was assuming, it was for a period of only two years. This period was later extended to 3½ years by amendment of the SPMI–Zephyr sublease.

On October 21, 1990, Zephyr assigned the SPMI–Zephyr sublease to Homestead Minerals Corporation ("Homestead"). (Hereinafter, this transaction shall be referred to as the "Zephyr–Homestead assignment.") SPMI consented to this assignment.

Apparently in 1991 (the date is unclear from the record), Mary Mining was assigned NCNB's interest as lessor in the NCNB–SPMI lease.

Homestead subsequently defaulted on royalties and other amounts due under its assigned sublease, and filed a petition under Chapter 11 in the U.S. Bankruptcy Court for the District of Nevada. Homestead desired to assume the lease under the provisions of 11 U.S.C. § 365. As part of this assumption, Mary Mining, SPMI, and Homestead entered into a stipulation. Homestead assumed all the obligations under the original NCNB–SPMI lease, and became liable to Mary Mining directly. Provision was made for repayment of the unpaid royalties and other amounts due under the assigned sublease in the amount of $228,661.13 by Homestead to Mary Mining.[1] The parties also agreed the stipulation was not intended to be a novation, and did not relieve SPMI of any obligation it might have to cure the defaults; however, SPMI reserved the right to assert any defense it might have to such liability. Homestead has apparently failed to meet its obligations under the stipulation, and its case was converted from Chapter 11 to Chapter 7 on December 31, 1992.

Mary Mining then brought a motion in SPMI's pending bankruptcy to require SPMI to assume or reject the NCNB–SPMI lease. This Court concluded that SPMI no longer had an interest to assume or reject under the lease, and denied the motion. Subsequently, Mary Mining filed the current motion.

### DISCUSSION

In order to determine the extent of any liability SPMI may have to Mary Mining, the status of the contractual relations between the parties must first be determined.

■ "A transfer or conveyance by a lessee of his full term, or the remainder thereof, which does not reserve to the lessee a reversionary interest in the leasehold estate, has the legal effect of an assignment of the lease and is not a sublease." *Groth v. Continental Oil Co.*, 84 Idaho 409, 413, 373 P.2d 548, 549 (1962). Here, SPMI's estate was a 20–year lease. SPMI

conveyed only two years of that estate by the lease to Zephyr (extended to 3½ years by amendment to the sublease). SPMI had a reversionary interest, and therefore the lease to Zephyr is properly characterized as a sublease, and not an assignment. The transfer from Zephyr to Homestead, in contrast, was an assignment; Zephyr conveyed all of its rights and duties under the SPMI–Zephyr sublease to Homestead, and did not retain any reversion or impose any new terms on Homestead.

■ While there is no Idaho case on point, it is generally recognized that a sublease of property does not discharge the lessee/sublessor from the obligation to pay rent on the property. *See Brosnan v. Kramer*, 135 Cal. 36, 66 P. 979, 980–81 (1901) (where lessor accepted rent payments from sublessee, lessee was not released from obligation to pay rent); Annot., "Acceptance of rent from assignee or sublessee as relieving assignor or sublessor," 36 A.L.R. 316, 319–20 (1925); 49 Am.Jur.2d Landlord and Tenant § 500 (1970). "Absent an express novation, a lessee remains in privity of contract with the lessors and is a guarantor for performance of the covenants in the agreement." *George W. Watkins Family v. Messenger*, 115 Idaho 386, 766 P.2d 1267, 1271 (App.1988) (assignment; lessee/assignor held liable for assignee's defaults on rent, even though lessor consented to assignment). Accordingly, as of the time that SPMI subleased the property to Zephyr, SPMI remained liable for payments due to NCNB regardless of whether it was in possession or not.

■ This analysis speaks only as to the legal effect of the SPMI–Zephyr sublease as of the time at which it was created, however. SPMI contends that NCNB negotiated directly with Homestead after the Zephyr–Homestead assignment. These negotiations, contends SPMI, reached tentative settlements, deferrals, and/or payment schedules regarding the royalty payments; SPMI was not a party to these negotia-

---

1. According to the stipulation later entered in the Homestead chapter 11 case, this amount represents "past-due royalty payments, interest on royalty arrearages, and attorney's fees/costs."

tions, and did not consent to their terms. SPMI, relying on the general contract principle that subsequent material modifications of the terms of a contract releases a guarantor or surety of the obligor, argues it was released by these negotiations. SPMI cites in support *Ore–Ida Potato Products, Inc. v. United Pacific Ins. Co.*, 87 Idaho 185, 392 P.2d 191 (1964).

In the case of an assignment (which may be though of as a sublease transferring all of the lessee's interest in the property), the rule has been stated as follows:

> 'Regardless of the precise analysis of the theories by which the lessee may be relieved of liability by an assignment, the principle is clear that an agreement between the lessor and the assignee materially varying the terms of the original lease will on one theory or another result in the termination of the lessee's covenant to pay rent.... The lessee is not discharged, however, by variations which inure to his benefit.... Nor is the lessee discharged by agreements between lessor and assignee which may increase the liability of the lessee, but which are permitted by the terms of the original lease, to the benefits of which the assignee is entitled.'

*Gerber v. Pecht*, 15 N.J. 29, 32–33, 104 A.2d 41, 42–43 (N.J.1954) (citations omitted) (quoting *Walker v. Rednalloh Co.*, 299 Mass. 591, 13 N.E.2d 394 (1938)). *See Meredith v. Dardarian*, 83 Cal.App.3d 248, 147 Cal.Rptr. 761, 763–64 (1978) (lessee/assignor is "like" a surety as to the obligations between assignee and assignor, but as between lessor and lessee the lessee remains a primary obligor under the lease). *See also Ore–Ida, supra*, 392 P.2d at 199–200 (compensated surety must show not only that there was a material alteration in the underlying contract, but also that the surety was prejudiced or injured as a result, before surety is discharged from obligations).

The sparse allegations by SPMI that NCNB and Homestead entered into tentative repayment schedules of defaults do not indicate that SPMI's liability was increased. SPMI was liable for the amount of the defaults regardless; temporary payment schedules, or delays in collection, may very well have permitted Homestead to *decrease* SPMI's liability, thus conferring a benefit on SPMI. At the very least, SPMI has failed to show that the extension of time prejudiced its interests. *See Ore–Ida, supra*, 392 P.2d at 200.

The negotiations between NCNB and Homestead therefore do not appear to have discharged SPMI's liability under the original lease. SPMI would appear to remain liable for defaults that took place while Homestead operated the property.

■ Consideration must also be given to the effect of the stipulation and order entered by the U.S. Bankruptcy Court for the District of Nevada in the Homestead bankruptcy. After reviewing both documents, it is concluded the stipulation and order did not release SPMI from its liability to Mary Mining for defaults. Homestead assumed the NCNB–SPMI lease, and was made directly liable to Mary Mining as the successor of NCNB. The stipulation provided that the stipulation and order were not intended to be a novation; Mary Mining expressly reserved the right to seek payment of the default from SPMI, and SPMI specifically reserved the right to assert a novation as a result of earlier transactions.

Taken as a whole, this stipulation and order had the effect of changing the relationships between the parties. Because (1) Homestead assumed the entire NCNB–SPMI lease, (2) Homestead became liable directly to Mary Mining, and (3) SPMI was not released from liability by this transaction, SPMI would appear to have assumed the status of guarantor of the new Mary Mining–Homestead lease. The relationship between the parties is analogous to what would occur if SPMI's transaction with Zephyr (and subsequently with Homestead) had been an assignment, rather than a sublease. SPMI does not retain an interest in the lease, but apparently remains liable for defaults by the assignee.

In summation then, SPMI holds no lease from Mary Mining that SPMI is obligated to assume or reject under section 365. The issue of SPMI's liability to Mary Mining is

another matter as SPMI may be contractually responsible to Mary Mining for Homestead's defaults. There is a distinction between bringing lease obligations current under section 362 and the existence of a general claim.

Accordingly, the order of January 6, 1993, finding that SPMI has no interest in the lease that it may assume or reject under 11 U.S.C. § 365 is affirmed. The nature and extent of SPMI's liability to Mary Mining, if any, should be left to the claims process under applicable statutes and Part III of the Federal Rules of Bankruptcy Procedure. For this determination Mary Mining may file a claim if it has not already done so.

A separate order will be entered.