## PORT AUTHORITY OF the CITY OF ST. PAUL, Respondent,

v.

## Keith T. and Diane N. HARSTAD, Appellants.

No. CX-94-2283.

Court of Appeals of Minnesota.

April 25, 1995.

Review Denied June 14, 1995.

Richard D. Anderson, Briggs and Morgan, St. Paul, for respondent.

Thomas G. Wallrich, Fafinski & Wallrich, P.A., Minneapolis, for appellants.

Considered and decided by HUSPENI, P.J., RANDALL and MINENKO,* JJ.

## OPINION

EUGENE MINENKO, Judge.

Appellants Keith T. and Diane N. Harstad leased land from respondent Port Authority of St. Paul and subleased it to first one and then another third party. In Harstads' subsequent bankruptcy, the bankruptcy court granted Harstads' request to assume what Harstads represented to the bankruptcy court was their "lease" obligation. Later, Harstads stopped paying rent to the Port Authority and the Port Authority sued Harstads. When the Port Authority sought summary judgment, Harstads claimed that the parties' agreement was an equitable mortgage. Harstads also sought additional time for discovery and to join the third parties to the suit. The district court denied Harstads' motions and granted the Port Authority summary judgment. We affirm.

## FACTS

In 1982, Harstads purchased land from the Housing and Redevelopment Authority so that they could develop it for use by the Victory House charity. Harstads later deeded the property to the Port Authority in return for development money which the Port Authority raised by selling bonds. Harstads leased the property from the Port Authority, developed it, and subleased it to Victory House. When Victory House defaulted on rent on October 1984, the Port Authority resolved the matter by dealing directly with Victory House. Later, the Port Authority adopted a policy of dealing directly with Victory House.

In April 1987, the Port Authority, Harstads, Victory House, and Catholic Charities agreed to assign the Victory House sublease to Catholic Charities.

In February 1990, Harstads filed for chapter 11 bankruptcy protection. Harstads then sought permission from the bankruptcy court to assume what they represented to the bankruptcy court was their "lease" obligation to the Port Authority. In April 1990, the bankruptcy court granted Harstads' motion. In October 1992, the bankruptcy court approved Harstads' chapter 11 reorganization plan. The plan did not specifically mention Harstads' obligation to the Port Authority.

In June 1993, Catholic Charities stopped paying rent because of disputes with Harstads. In September 1993, Harstads sued Catholic Charities in Hennepin County. Documents in the file indicate that in the Hennepin County action, Catholic Charities claims that it is withholding rent pursuant to the sublease with Harstads.

In October 1993, Harstads stopped paying rent to the Port Authority. In December 1993, the bankruptcy court closed Harstads' bankruptcy proceeding.

In March 1994, the Port Authority sued Harstads in Ramsey County. Harstads claimed, among other things, that because the bankruptcy court retained jurisdiction over disputes relating to unexpired leases and contracts, the district court lacked subject matter jurisdiction over the Port Authority's claim. Harstads did not, however, address the fact that after the bankruptcy court issued the order retaining jurisdiction, the bankruptcy court closed the entire proceeding.

In July 1994, the Port Authority moved for summary judgment on the lease. Harstads claimed that summary judgment was inappropriate for several reasons, including that (a) the parties' agreement was an equitable mortgage, not a lease, and that the mortgage had to be foreclosed; (b) Harstads' obligation under the equitable mortgage was discharged in bankruptcy; (c) any assumption of the lease in bankruptcy was invalid because neither Victory House nor Catholic

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Charities were notified of the assumption as required by bankruptcy court rules; (d) the Port Authority's conduct in dealing directly with Victory House and Catholic Charities absolved Harstads from liability on the lease; (e) the Port Authority's conduct in dealing directly with Victory House and Catholic Charities meant that it was necessary to join those parties to the Port Authority's action; and (f) Harstads were entitled to more time for discovery.

By order dated September 20, 1994, the district court rejected Harstads' arguments and granted the Port Authority summary judgment stating, among other things, that because Harstads' treated the parties' agreement as a lease in bankruptcy, they could not now claim that the agreement was an equitable mortgage.

### ISSUES

1. Did the district court have jurisdiction over the case?

2. Are Harstads estopped from claiming that the parties' agreement is not a lease?

3. Did the district court err by rejecting Harstads' claims that they did not assume the lease in bankruptcy?

4. Did the district court err by denying Harstads' request for additional time for discovery?

5. Did the district court err by denying Harstads' request to join Catholic Charities and Victory House to the action?

### ANALYSIS

On appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

### I.

■ Under Article X of Harstads' bankruptcy reorganization plan, until the plan was "fully consummated," the bankruptcy court retained jurisdiction over disputes regarding executory contracts and unexpired leases as well as claims between Harstads and other parties. Harstads claim that under Article X, the bankruptcy court, not the district court, had jurisdiction over the Port Authority's claim. The bankruptcy court closed Harstads' case in December 1993. "It is axiomatic that the bankruptcy court is divested of jurisdiction over property of the estate and disputes relating to that property once the bankruptcy case is closed." *In re Greer,* 89 B.R. 757, 759 (Bankr.S.D.Ill.1988); *see* 1 David G. Epstein, et al., *Bankruptcy,* § 3–23 (1992) (upon closing a bankruptcy case, "the bankruptcy court's general supervision and remaining jurisdiction are surrendered.") (footnote omitted). The district court did not lack jurisdiction over the Port Authority's claim.

### II.

The crux of the parties' dispute is whether their agreement should be treated as an equitable mortgage or a lease.

#### A. Collateral Estoppel

■ Harstads claim that *Gilliland v. Port Authority of St. Paul,* 270 N.W.2d 743 (Minn. 1978) collaterally estops the Port Authority from claiming that the parties' agreement is not an equitable mortgage. Collateral estoppel applies if (1) an issue in a current case is the same as one in a prior case; (2) the prior case ended in a final judgment on the merits; (3) the estopped party was a party to the prior case; and (4) the estopped party had a full and fair chance to be heard on the adjudicated issue. *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn. 1982).

■ *Gilliland* ruled that a sale-lease back arrangement similar to that here was an equitable mortgage. *Gilliland,* 270 N.W.2d at 747. Transactions are not construed to be equitable mortgages "unless both parties intended to enter into a mortgage agreement. * * * Moreover, * * * the 'relevant intention is that of the parties *at the time of the conveyance.*'" *Miller v. Anderson,* 394 N.W.2d 279, 283 (Minn.App.1986) (quoting *Ministers Life and Cas. Union v. Franklin*

*Park Towers Corp.*, 307 Minn. 134, 137–38, 239 N.W.2d 207, 210 (1976)). *Gilliland* did not and could not address the intent of Harstads and the Port Authority when they entered the agreement at issue in this case. Therefore, collateral estoppel based on *Gilliland* is not applicable to this case.

### B.  *Judicial Estoppel*

The Port Authority claims that Harstads' adoption of the "lease" in bankruptcy judicially estops Harstads from claiming that the parties' agreement is not a lease.

> Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so. It is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. Although the doctrine is not reducible to a pat formula, we have recognized certain boundaries. First, the later position must clearly be inconsistent with the earlier position. Also, the facts at issue should be the same in both cases. Finally, the party to be estopped must have convinced the first court to adopt its position; a litigant is not forever bound to a losing argument.

*Levinson v. U.S.*, 969 F.2d 260, 264–65 (7th Cir.1992) (citations omitted).

■ The district court ruled that Harstads treated the parties' agreement as a lease for bankruptcy purposes and "[could not] now come in good faith before this court and allege that the agreement is not a lease in an attempt to avoid liability." The district court ruling is consistent with judicial estoppel because (a) Harstads' present claim that the parties' agreement is an equitable mortgage is inconsistent with their representation in bankruptcy court that the agreement was a lease; (b) the same agreement is the subject of both the present case and a bankruptcy court order; and (c) the bankruptcy court adopted Harstads' assertion that the agreement was a lease by granting Harstads' mo-

tion to assume that lease. Harstads are judicially estopped from claiming their agreement with the Port Authority is not a lease.[1]

### C.  *Port Authority's Ability to Pursue Remedies*

■ Harstads claim that the Port Authority cannot pursue remedies as a lessor. We disagree. Under Minn.Stat. § 469.153, subd. 4 (1994) and statutes referred to therein, a "redevelopment authority" includes the Port Authority. Under Minn.Stat. § 469.155, subd. 5 (1994) a redevelopment authority may enter into a "revenue agreement with any person, firm, or public or private corporation[.]" "A revenue agreement may be in the form of a lease" and must be arranged to produce sufficient revenue to pay the associated bonds. Minn.Stat. § 469.153, subd. 10 (1994). Under Minn.Stat. § 469.155, subd. 8 (1994), a redevelopment authority "may * * * do all things necessary or convenient * * * in order to secure the payment of its bonds." When a revenue agreement is in the form of a lease and a default occurs, it may be convenient or necessary for the development authority to pursue a lessor's remedies in attempts to secure the payment of the bonds.

### III.

■ Harstads claim that their assumption in bankruptcy of the lease was invalid because neither Victory House nor Catholic Charities were notified of the assumption. Harstads' claim is functionally an attempt to appeal to this court the bankruptcy court order granting Harstads' own motion to assume the lease. A state appellate court is not the proper forum to challenge a bankruptcy court ruling. *See* Bankruptcy Rule 8001 (regarding appeals from bankruptcy court).[2]

Harstads also claim that their debt to the Port Authority was discharged in bankruptcy because it was not addressed in their reorga-

---

1. Our conclusion that Harstads are precluded from claiming that their agreement is not a lease renders it unnecessary to address Harstads' claim that the parties' agreement fits the profile of an equitable mortgage.

2. A similar analysis addresses Harstads' claim that because the parties' agreement was an equitable mortgage rather than a lease, it could not be assumed in bankruptcy.

nization plan. Harstads' reorganization plan states:

> Any * * * unexpired leases of [Harstads] that are not otherwise specifically rejected are assumed as of the date of the Court's Order confirming this Plan is entered. The * * * unexpired leases listed on Exhibit F will be rejected by confirmation of this Plan.

Harstads specifically assumed the lease in question and exhibit F to Harstads' bankruptcy reorganization plan is not in the file before this court. Harstads have failed to produce a record which shows error by the district court. *See Truesdale v. Friedman,* 267 Minn. 402, 404, 127 N.W.2d 277, 279 (1964) ("[T]he party seeking review has the duty to see that the appellate court is presented with a record which is sufficient to show the alleged errors.").

### IV.

Harstads claim that summary judgment was premature because there was insufficient time to complete discovery on whether their obligations to the Port Authority had been assigned to Victory House and/or Catholic Charities. Under Minn.R.Civ.P. 56.06, the district court may continue a summary judgment motion if a party opposing the motion cannot present facts essential to the party's opposition to the motion. Generally continuances are to be liberally granted. *Bixler v. J.C. Penney Co., Inc.,* 376 N.W.2d 209, 216 (Minn.1985). Here, however, the district court did not err by denying Harstads' motion for a continuance.

■ A sublease of property does not absolve an original lessee from liability under the lease if the sublessee fails to perform. *Rees v. Lowy,* 57 Minn. 381, 383–84, 59 N.W. 310, 310 (1894).[3] The lease states that "any sublessee shall agree to pay rent directly to the Authority" upon "any Event of Default." Thus, the Port Authority's direct dealings

with the sublessee, because of Victory House's 1984 default, do not mean that the Port Authority intended to release Harstads from liability under the lease. Further, while the lease states that Harstads "shall" be relieved of "primary liability" under the lease "in the event of an assignment of the Lease to any transferee or any surviving or resulting business entity permitted under Section 4.05," section 4.05 states that the transfer of Harstads assets "shall not * * * discharge the liability of [Harstads] for [their] obligations hereunder." Thus, reading lease §§ 5.01 and 4.05 together: If Harstads assigned their interest in the lease to another entity, Harstads were no longer primarily liable on the lease but they were still liable if the transferee defaulted. This is functionally what happened here. The district court did not err by not allowing Harstads additional time for discovery. *See McCormick v. Custom Pools, Inc.,* 376 N.W.2d 471, 477 (Minn.App.1985) (summary judgment granted before completion of discovery was not premature where additional discovery would have neither aided the district court in determining whether material fact issues existed nor changed the result of the summary judgment motion).[4]

### V.

■ Harstads claim that the district court erred by denying their motion to join Victory House and/or Catholic Charities as indispensable parties. Under Minn.R.Civ.P. 19.01:

> A person who is subject to service of process shall be joined as a party in the action if (a) in the person's absence complete relief cannot be accorded among those already parties, or (b) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (1) as a practical matter impair or impede

---

3. *Rees* is consistent with current law in other jurisdictions. *See, e.g., In re Sunshine Precious Metals, Inc.,* 152 B.R. 978 (Bk.D.Id.) (1993); *Step Ahead, Inc. v. Lehndorff Greenbriar, Ltd.,* 171 Ga.App. 805, 321 S.E.2d 115 (1984); *Shadeland Dev. Corp. v. Meek,* 489 N.E.2d 1192 (Ind.App. 1986); *185 Madison Assocs. v. Ryan,* 174 A.D.2d 461, 571 N.Y.S.2d 244 (1991).

4. We also note that under the lease, "no assignment or sublease" relieves Harstads from primary liability under the lease absent approval of the underwriter and that Harstads point to no underwriter approval which would release them from primary liability under the lease.

**502**

the person's ability to protect that interest or (2) leave any one already a party subject to a substantial risk or [sic] incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest.

Harstads claim:

[They] will be prejudiced, and may be subject to multiple liability if Victory House and Catholic Charities are not joined. This Court could hold that the agreement between [Harstads] and [the Port Authority] is a lease which would preclude [Harstads] from asserting contrary arguments in any subsequent litigation with Catholic Charities * * * Catholic Charities, however, would be allowed to assert any and all defenses.

How Harstads might be subject to multiple liability if the parties' agreement is ruled a lease is not clear. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519, 187 N.W.2d 133, 135 (1971) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived."). Apparently, however, Harstads claim that in the Hennepin County litigation, Catholic Charities might be able to raise defenses to which Harstads would not be able to make a corresponding claim. If the unspecified defenses which Harstads fear are applicable in a lease action, they may apply in the Hennepin County litigation; if they do not apply to a lease claim, while the defenses may be raised, they would be irrelevant. In either case, no prejudice to Harstads is obvious.[5]

### DECISION

The district court did not lack jurisdiction over the case and properly invoked judicial estoppel to preclude Harstads from treating the parties' agreement as something other than the lease which Harstads claimed the agreement to be in their prior bankruptcy proceedings. Harstads were not prejudiced by the district court's denial of their motion

for additional discovery time and it was not an abuse of the district court's discretion to deny Harstad's motion to join Victory House and Catholic Charities to this action.

**Affirmed.**

---

5. Harstads' reply brief suggests that the Port Authority and Catholic Charities conspired to force Harstads to default on Harstads' obligations to the Port Authority. The Port Authority denies this claim and asks that the statement be stricken. Under Minn.R.Civ.App.P. 128.02, subd. 3, "[t]he reply brief must be confined to new matter raised in the brief of the respondent." Because the Port Authority's brief did not allege that the Port Authority conspired with Catholic Charities, we strike the challenged portion of Harstads' reply brief.